**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DOMINION VIDEO SATELLITE, INC.,

Plaintiff - Appellee,

v.

ECHOSTAR SATELLITE L.L.C., f/k/a
ECHOSTAR SATELLITE
CORPORATION,

Defendant - Appellant,

TODD A. JANSEN, T. WADE WELCH,
and ROSS W. WOOTEN,

Parties of Interest-
Appellants.

Nos. 04-1465, 05-1080

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D. Ct. No. 03-K-0607)**

---

Submitted on the briefs:[*]

Todd Jansen, Cockrell, Quinn & Creighton, Denver, Colorado; T. Wade Welch and Ross
W. Wooten, T. Wade Welch & Associates, Houston, Texas, for Defendant-Appellant.

---

[*]After examining the briefs and the appellate record, this three-judge panel has
determined unanimously that oral argument would not be of material assistance in the
determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The
case is therefore ordered submitted without oral argument.

Mark D. Colley and Cameron W. Fogle, Holland & Knight LLP, Washington, DC; Thomas D. Leland, Hale Friesen LLP, Denver, Colorado, for Plaintiff-Appellee.

---

Before **TACHA**, Chief Circuit Judge, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

---

**TACHA**, Chief Circuit Judge.

---

This case began in 2003 when Plaintiff-Appellee Dominion Video Satellite, Inc. ("Dominion") claimed that Defendants-Appellants EchoStar Satellite Corporation and Echosphere Corporation (collectively, "EchoStar") were in breach of a lease agreement between the parties and sought to have the matter arbitrated as required by the agreement. After holding hearings on the dispute, the arbitration panel found in favor of Dominion and granted it $2,438,178 in damages. Dominion moved the District Court to confirm the award, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 9 and 13. EchoStar vigorously opposed both the arbitration panel's decision as well as Dominion's motion to confirm by filing numerous motions and supporting memoranda. In October 2004, the District Court confirmed the arbitration award. It also determined that EchoStar had unreasonably and vexatiously extended the arbitration hearings and court proceedings. As a result, the District Court sanctioned counsel for EchoStar and awarded Dominion its costs, expenses, and attorneys' fees incurred in responding to EchoStar's frivolous motions. *See* 28 U.S.C. § 1927. EchoStar appeals the confirmation of the arbitration award; its counsel also appeals the fees and costs awarded to Dominion. We take

jurisdiction of both appeals under 28 U.S.C. § 1291 and AFFIRM.

## I.  BACKGROUND

Both Dominion and EchoStar operate direct broadcast satellite systems ("DBS") that are licensed and regulated by the Federal Communications Commission.  Dominion's network, known as "Sky Angel," offers predominantly Christian programming on approximately twenty channels.  EchoStar's network, known as the "DISH Network," offers a wide variety of programming on over 500 channels.  Prior to 1996, Dominion could not broadcast its Sky Angel network to DBS consumers because it did not own any satellites.  At the same time, EchoStar could not meet its consumers needs because, although it owned a satellite, it did not own sufficient FCC broadcastings license rights to serve its market.

In 1996, Dominion and EchoStar executed a mutually beneficial contract entitled "Direct Broadcast Service Transponder Lease, Channel Use and Programming Agreement" ("Agreement").  Under the terms of the Agreement, EchoStar leases eight transponders[1] from its broadcasting satellite to Dominion and in return Dominion subleases six of these frequencies back to EchoStar with accompanying FCC license rights.  Thus, this Agreement gives Dominion a platform from which to broadcast the Sky Angel network and provides EchoStar increased capacity to serve its market.

---

[1]A transponder is a device on a satellite that receives signals from Earth and then transmits those signals back to the planet for reception covering a broad area.

As a result of this arrangement, DBS consumers who wish to subscribe either to EchoStar's DISH Network or to Dominion's Sky Angel network must purchase the same DISH-brand equipment. Therefore, to prevent the parties from competing for the other's customers, the Agreement includes a "Programming Exclusivity" provision that prohibits EchoStar from carrying Christian programs.

In December 2002, EchoStar began broadcasting several predominantly Christian channels on the DISH Network. After attempting to persuade EchoStar that the Programming Exclusivity provision prohibited such action, Dominion sued to enjoin EchoStar from broadcasting these programs. After three days of hearings, during which the District Court was thoroughly briefed on the merits of the underlying dispute, the District Court granted Dominion a preliminary injunction.[2] In so doing, the District Court noted that EchoStar's arguments on the merits of the underlying contractual dispute—including claims regarding federal preemption, legal impossibility, res judicata, and purported violations of the First Amendment—were "disingenuous," "exceedingly fanciful," and based on "a gross contortion" of governing law. The District Court then ordered the parties to arbitrate their dispute in accordance with a binding arbitration provision in the Agreement.

---

[2]This Court vacated the preliminary injunction on grounds unrelated to the present appeal and specifically declined to address EchoStar's arguments on the merits of the dispute. *See Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 356 F.3d 1256, 1266 & n.8 (10th Cir. 2004).

Thereafter, Dominion filed a demand for arbitration with the American Arbitration Association and sought monetary and injunctive relief. The dispute was heard by an arbitration panel composed of three members who were selected in accordance with the Agreement: one panel member was selected by each of the parties, and these two panelists selected a third "neutral" member. The panel opted to bifurcate the proceedings—it would first resolve the issue of contractual interpretation and then, if necessary, it would address the question of damages. In the first proceeding, in March 2004, EchoStar raised the same arguments the District Court had called "disingenuous," "exceedingly fanciful," and based on "a gross contortion" of governing law. The panel unanimously decided that EchoStar's broadcast of certain Christian channels violated the Programming Exclusivity provision of the Agreement. It issued a final award to that effect (which the panel called a "partial final award" because it had yet to resolve the damages issue). The panel then scheduled a remedies hearing.

In the partial final award, the panel issued certain directives to the parties to prevent future breaches of the Agreement. EchoStar, however, refused to comply with those directives. As a result, Dominion moved the District Court to confirm the partial final award. Notwithstanding the well-established rule that a district court may vacate an arbitration award only in the narrowest of circumstances—such as fraud, corruption, and manifest disregard of controlling law—EchoStar opposed Dominion's motion and moved to vacate the partial final award. In that motion, EchoStar again argued that federal

preemption, legal impossibility, and the First Amendment prohibited confirmation of the award.

While the District Court was considering Dominion's motion to confirm the partial final award, the arbitration panel held the remedies hearing. In September 2004 it issued a unanimous final award, which included an award of $2,438,178 for past economic harm suffered by Dominion. Dominion moved the District Court to confirm the final award, and EchoStar again filed an opposition brief and a motion to vacate the final award. Dominion's brief in opposition to EchoStar's motion to vacate included a request that the District Court sanction EchoStar under 28 U.S.C. § 1927 by awarding Dominion its fees and costs incurred defending against EchoStar's motions to vacate.

The District Court scheduled a consolidated hearing on October 20, 2004 to hear all the pending motions. At the hearing, EchoStar defended their decision to again raise the previously rejected arguments, including the federal preemption and First Amendment contentions. The District Court confirmed both arbitration awards and granted Dominion's motion for sanctions. It then made an oral ruling that Dominion "may obtain [its fees under § 1927] within the next 10 days by filing a motion or a statement of agreement. If there is a disagreement as to the amount of fees, I will appoint a special master and assess costs as the special master recommends on the attorneys fees issue." The ruling was incorporated into a written judgment on October 22.

On October 29, Dominion sent a letter to EchoStar's counsel listing the fees it had

incurred in seeking confirmation of the panel's award. The letter stated Dominion was "attempt[ing] to reach agreement on the amount of fees and costs to be paid by EchoStar" and explained that it would need EchoStar's response by November 3 in order to meet the deadline established by the District Court. EchoStar failed to respond to Dominion's letter in any way.

On November 5, Dominion filed a motion with the District Court seeking $62,686.02 in attorneys' fees. As it had done at nearly every stage of the proceedings, EchoStar responded with a motion in opposition and a supporting brief.[3] During a hearing on the matter, the District Court called this case "the most glaring example of the wisdom of having [§ 1927]." It ordered three attorneys for EchoStar—co-Appellants Todd A. Jansen, T. Wade Welch, and Ross W. Wooten—to pay Dominion's requested fees. It then ordered the attorneys to pay an additional $750 to Dominion for attorneys' fees incurred in preparing for the hearing that could have been avoided if EchoStar had responded to Dominion's October 29th request for attorneys' fees.

EchoStar, through Mr. Jansen, Mr. Welch, and Mr. Wooten, now appeals the District Court's order confirming the arbitration awards. Mr. Jansen, Mr. Welch and Mr. Wooten also appeal the District Court's imposition of $63,436.02 in attorneys' fees and costs under § 1927.

---

[3]Ultimately, the District Court struck EchoStar's opposition papers because they contained several gross mischaracterizations of case law.

## II.  ARBITRATION AWARD

A.      <u>Standard of Review</u>

Judicial review of arbitration panel decisions is extremely limited; indeed, it has been described as "among the narrowest known to law." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001) (quotation omitted).  Under § 10 of the Federal Arbitration Act, a court may vacate an arbitration award "in certain instances of fraud or corruption, arbitrator misconduct, or 'where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, definite award upon the subject matter submitted was not made.'" *Id.* (quoting 9 U.S.C. § 10(a)(4)).  In addition, we have acknowledged a judicially-created basis for vacating an award when the arbitrators acted in "manifest disregard" of the law.  *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995).  This standard requires a finding that the panel's decision exhibits "willful inattentiveness to the governing law." *Id.*  Merely "erroneous interpretations or applications of law are not reversible." *Id.*   Put another way, we "[r]equir[e] more than error or misunderstanding of the law[.] [A] finding of manifest disregard means the record will show the arbitrators knew the law and explicitly disregarded it." *Bowen*, 254 F.3d 932 (internal citation omitted).  Finally, we review a district court's factual findings in confirming the award for clear error and its legal conclusions de novo.  *Denver & Rio Grande W. Ry. Co. v. Union Pac. Ry. Co.*, 119 F.3d 847, 849 (10th Cir. 1997).

B.      <u>Merits</u>

Despite the narrow grounds for judicial review of arbitration panel decisions, EchoStar advances multiple theories for why this Court should overturn the District Court's decision to confirm the final award. Specifically, EchoStar argues that the award should be set aside because: (1) federal law preempts Dominion's claim for breach of contract; (2) the award violates the First Amendment's prohibition on content-based restrictions and prior restraints; (3) claim preclusion bars the award; (4) the doctrine of legal impossibility bars the award; (5) Dominion's breach of contract claim is not justiciable; and (6) the Agreement does not provide for damages for any breach by the parties. If the award is not vacated, EchoStar argues that it should be remanded to the panel for clarification as to how it reached its figure for damages.

As an initial matter, we note that none of EchoStar's arguments include allegations that fraud, corruption, or arbitrator misconduct marred the panel's proceedings. As such, EchoStar can only succeed if it shows that the panel acted in manifest disregard of the law or otherwise exceeded its powers. As we proceed to the merits of EchoStar's contentions, we are mindful that nearly all of its arguments have been raised and rejected three times: first by the District Court prior to arbitration when Dominion sought a preliminary injunction; then again by the arbitration panel itself; and finally, by the District Court when Dominion sought to confirm the arbitration panel's award.

1.    *Federal Preemption*

In 1992, Congress passed legislation establishing public interest obligations for

DBS providers such as EchoStar and directed the FCC to require every provider to reserve a portion of its channel capacity exclusively for non-commercial programming of an educational or informational nature. *See* 47 U.S.C. § 335. Current regulations require EchoStar to reserve four percent of its channel capacity for such use. *See* 47 C.F.R. § 25.701(f)(1). EchoStar argues that because Christian programs are educational, federal law preempts Dominion's claim that EchoStar violated the Agreement by broadcasting Christian programs.

To the contrary, neither the legislation nor the regulation either explicitly or by implication preempts the enforcement of the Programming Exclusivity provision in the agreement between Dominion and EchoStar. Furthermore, EchoStar cites no controlling precedent and it fails to identify any evidence in the record that indicates the Panel acted in "manifest disregard" of the law. As such, this is not a legitimate basis to overturn the Panel's ruling.

2.    *First Amendment*

EchoStar next argues that the District Court's order confirming the arbitration award and enjoining EchoStar from broadcasting Christian programming is both a content-based restriction on speech and an unlawful prior restraint on speech. Again, however, EchoStar's argument must be rejected. Not only has EchoStar failed to provide relevant authority to satisfy its burden of demonstrating state action (a finding required to trigger application of the First Amendment), it has also failed to allege or point to any

-10-

evidence that the panel willfully ignored relevant First Amendment doctrine when it found in Dominion's favor. We therefore refuse to vacate the panel's decision on this basis.

3.    *Claim Preclusion*

In 2001, a different arbitration panel resolved a prior dispute between Dominion and EchoStar regarding the interpretation of another provision in the Agreement. In the course of that decision, the prior panel made a single isolated reference to a limited exception to the Agreement's Programming Exclusivity provision that is at issue in the case. EchoStar now argues that claim preclusion prevents confirmation of the arbitration award.

Claim preclusion bars the re-litigation of "issues that were decided or issues that could have been raised in the earlier action." *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir. 1995). The record shows that even though the prior arbitration panel referenced a provision of the Agreement at issue in this case, it did not decide any issues related to that exception, nor was the reference invited by the parties or necessary to the resolution of the prior dispute. Thus, claim preclusion does not apply.

4.    *Impossibility*

Under the defense of impossibility of performance, a party's breach of its contractual obligation will be excused when "changed circumstances have rendered the promise vitally different from what reasonably should have been within the contemplation

-11-

of both parties when they entered into the contract." *Colo. Performance Corp. v. Mariposa Assocs.*, 754 P.2d 401, 407 (Colo. Ct. App. 1987) (quotation omitted). EchoStar claims that the FCC regulations, which were promulgated in 1998 and require EchoStar to reserve four percent of its programming capacity for educational or informational purposes, make it impossible for it not to broadcast Christian programming. EchoStar's bare allegations, which are not supported by the record, do not establish evidence in support of this contention, however, and we will therefore not vacate the arbitration award on this basis.

5.    *Justiciability*

In its request for arbitration Dominion alleged that, in addition to breaching the Programming Exclusivity provision, EchoStar was in breach of a provision that requires EchoStar to provide to Dominion "reasonable cooperation" in the activation of its customers' receivers. The panel ultimately concluded that EchoStar was not currently violating that clause but nonetheless ordered it to work with Dominion to find better ways to activate the receivers in the future. EchoStar argues that because the panel determined that it was not in breach, the panel could not issue an order requiring it to take any future action. EchoStar fashions this as an issue of "justiciability."

Again, this is not a basis to vacate the arbitration award. The concept of justiciability is derived from Article III of the Constitution and limits the jurisdiction of federal courts. This Court has found no controlling authority that mandates application of

-12-

those limits in arbitration.[4]

      6.     *Damages*

EchoStar next argues that the panel exceeded its authority by awarding Dominion

over two million dollars in damages because the Agreement states that the parties will not

be liable to each other "for any direct, indirect, incidental, consequential, special or other

damages . . . resulting from loss of actual or anticipated revenues or profits, or loss of

business, customers, or goodwill."  Contrary to EchoStar's assertions, this language

appears in a provision relating to the parties' right to indemnification from third-party

actions; it has no bearing on the parties' liability to each other for breach of contract.

Indeed, the arbitration panel was fully briefed on the issue and it concluded that the

provision did not preclude the award of damages.  EchoStar fails to provide this Court

with any evidence that in reaching this conclusion the panel disregarded the law or

exceeded its power, and we therefore will not vacate the award on this ground.  *See*

*Sterling Colo. Beef Co. v. United Food & Commercial Workers Local Union No. 7*, 767

---

[4]To the extent EchoStar agues that the arbitration panel exceeded the scope of its authority in fashioning this order, such argument must also be rejected.  The Agreement explicitly states that "any matter not resolved amicably between the parties to the satisfaction of both parties, shall be subject to mandatory binding arbitration."  Further, the Agreement permitted the panel to fashion orders so long as they were within the scope of the disputed issue.  The panel therefore acted within the scope of its authority when it defined the meaning of "reasonable cooperation" and instructed the parties to act in accordance with that definition.  *See Int'l Bhd. Elec. Workers Local Union No. 611 v. Pub. Serv. Co. of N.M.*, 980 F.2d 616, 618 (10th Cir. 1992) (stating that even if a court is convinced the arbitrator erred, this is not a basis for overturning the award as long as the arbitrator is "even arguably . . . acting within the scope of his authority").

F.2d 718, 720 (10th Cir. 1985) (stating that this Court will not set aside an arbitrator's decision "unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation").[5]

### 7.    *Remand for Clarification*

Finally, EchoStar contends that the District Court should have remanded the award to the panel to clarify how it reached the $2,438,178 figure.  Once again, the record before the District Court provides more than adequate support for the panel's award.  *See United Food & Commercial Workers Local Union v. Safeway Stores, Inc.*, 889 F.2d 940, 947–48 (10th Cir. 1989) ("[A]rbitration awards generally need not delineate reasons or reasoning, at least when the grounds for the award may be gleaned from the record.") (quotations omitted).  The cases EchoStar relies on simply do not support the proposition that an arbitration panel is required to set forth a precise mathematical calculation of the damages when the record provides adequate support for the amount of the award.  Moreover, to assert that "[t]he grounds for the Final Award cannot be inferred in this case" is to ignore over three days of testimony, briefing from the parties, and the expert reports provided by both parties.

---

[5]We note that this argument is particularly disingenuous given the fact that EchoStar took precisely the opposite position when it opposed the preliminary injunction before this Court in 2003.  *See Dominion Video Satellite*, 269 F.3d at 1156 ("EchoStar contends that the district court abused its discretion in finding irreparable harm.  A plaintiff suffers irreparable injury when the court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain.").

In sum, none of the arguments advanced by EchoStar are grounds for vacating the arbitration award. Furthermore, we find EchoStar's appeal of the confirmation of the award to be frivolous, *see Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987), and agree with Dominion that EchoStar has deprived Dominion of the primary benefit gained by submitting to arbitration: "to avoid the expense and delay of court proceedings," *see Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986). As a result, in its brief Dominion has asked this Court to award it attorneys' fees incurred in defending this appeal under Fed. R. App. P. 38. Because we may not impose such a sanction without a separately filed motion or notice, we invite Dominion, within fifteen days from the date of this opinion, to file a separate motion for sanctions in which it apprizes this Court of the reasonable and necessary attorneys' fees and costs incurred by it in opposing EchoStar's appeal from the District Court. EchoStar will then have fifteen days from the filing of Dominion's motion to show cause why it should not be sanctioned.

## III. SECTION 1927 SANCTIONS

Mr. Jansen, Mr. Welch, and Mr. Wooten (collectively, "attorneys for EchoStar" or "EchoStar's attorneys") challenge the basis for the District Court's order sanctioning them under 28 U.S.C. § 1927. They also claim they were not accorded sufficient due process prior to being sanctioned.

A.    Standard of Review

Section 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings

in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions under § 1927 are appropriate when an attorney acts "recklessly or with indifference to the law." *Braley*, 832 F.2d at 1511. They may also be awarded "when an attorney is cavalier or bent on misleading the court; intentionally acts without a plausible basis; [or]when the entire course of the proceedings was unwarranted." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (quotations and internal citations omitted). A decision to impose § 1927 sanctions is reviewed only for abuse of discretion. *Griffen v. City of Okla. City*, 3 F.3d 336, 342 (10th Cir. 1993).

B.    Merits

    1.    *Scope of § 1927*

EchoStar's attorneys contend that the District Court abused its discretion in determining that their acts fell within the purview of § 1927. The crux of their argument is that they filed the motions and briefs in opposition to confirmation of the award, to vacate the award, and in opposition of attorneys' fees only to preserve the issues for appeal.[6]

_____

[6]EchoStar also argues that the District Court abused its discretion in imposing sanctions because its attorneys did not act in bad faith. This Court, however, has explicitly held that § 1927 does not require a finding of bad faith. *Braley*, 832 F.2d at 1512.

It is evident from the record and the course of litigation that the behavior of EchoStar's attorneys was both "unreasonable and vexatious." The District Court found that, given the narrow standard of review, the arguments presented on behalf of EchoStar were completely meritless and therefore the course of the proceedings was unwarranted. The District Court also found that these attorneys need not have filed lengthy briefs at every stage of the arbitration and court proceedings in order to preserve EchoStar's arguments for appeal. Nothing in the record indicates that the District Court abused its discretion in finding such action sanctionable.

2.     *Due Process*

"The basic requirements of due process with respect to the assessment of costs, expenses, or attorney's fees are notice that such sanctions are being considered by the court and a subsequent opportunity to respond." *Braley*, 832 F.2d at 1514. In determining whether due process has been afforded, no bright-line rule applies because "[d]ue process is a flexible concept, and the particular procedural protections vary, depending upon all the circumstances." *Id.* EchoStar's attorneys first assert that they were not given sufficient notice of the specific conduct which became the basis for Dominion's costs and fees.

A review of the record discloses that Dominion asked for § 1927 sanctions in its brief opposing EchoStar's motion to vacate the final arbitration award. As a basis for sanctions, Dominion asserted that EchoStar filed the motion to vacate with the sole

intention of delaying payment of the arbitration award to Dominion. Dominon labeled the motion frivolous and concluded that "EchoStar has abused the judicial process in an effort to extend the duration of its breach and avoid paying Dominion just compensation." In addition, Dominion filed a reply in support of its motion to confirm in which Dominion similarly asserted that EchoStar's opposition to confirmation of the award is "another pretext for resistance and delay" and is "utterly frivolous." Finally, at the hearing on October 20, 2004, Dominion's counsel made reference to EchoStar's "multiple filings and challenges" and pointed out that Dominion had asked for sanctions in a prior brief to the court. At the same hearing, EchoStar's attorneys attempted to demonstrate that their actions were legitimate, which undermines any argument that they did not know what conduct might be sanctioned. Each of these facts belies the attorneys' present claim that they did not have sufficient notice of the specific conduct that was being considered for sanctions. It is clear that counsel knew Dominion had sought fees based on the fact that EchoStar filed several untenable motions and briefs, including the motion to vacate the award and its motion in opposition to confirm the award.

EchoStar's attorneys also argue that they were denied due process because they were not given an opportunity to contest the amount of the attorneys' fees alleged by Dominion. The record reflects, however, that after the District Court determined that fees were appropriate at the October 20 hearing, it outlined a clear process to be followed in order to determine the amount of fees chargeable to EchoStar's counsel: it asked the

parties to file a statement of agreement, and it specified that if the parties could not agree the court would appoint a special master to resolve the dispute. Dominion followed through with this process by sending a proposed agreement to EchoStar listing fees in excess of $60,000. EchoStar's counsel, however, completely ignored the proposed agreement, and instead, only filed an opposition motion once Dominion filed its November 5th motion to the District Court seeking its fees. Because EchoStar failed to take advantage of the process afforded them, it cannot not now complain that it was not afforded an opportunity to respond. *See Santana v. City of Tulsa*, 359 F.3d 1241, 1244 (10th Cir. 2004) (stating that the availability of sufficient procedure satisfies due process requirements if the complainant fails to take advantage of the procedure).

Finally, EchoStar's counsel argues that the District Court abused its discretion in sua sponte imposing an additional $750 sanction at the January 2005 fees hearing. As the District Court explained, the sanction was based on the amount of attorneys' fees Dominion incurred as a result of EchoStar's failure to respond to Dominion's October 29th letter requesting attorneys' fees. The District Court found that EchoStar's conduct "unnecessarily complicated and delayed this case." These grounds were substantially similar to the basis for sanctions EchoStar's attorneys had been apprized of several months earlier. As a result, these individuals cannot credibly claim that they did not know that filing a brief in opposition to attorneys' fees without conferring with opposing counsel in direct violation of the court's instructions might subject them to further

-19-

sanctions under § 1927. *See Sally Beauty Co. Inc. v. Beautyco, Inc.*, 372 F.3d 1186, 1191 (10th Cir. 2004) (stating that imposition of costs because of attorney's disregard for court imposed deadline is "reasonably foreseeable" and therefore counsel had adequate notice). Moreover, EchoStar's attorneys were present at the hearing and attempted to explain why they failed to respond to Dominion's request for fees. Under the facts and circumstances of this case, we find that this was a sufficient opportunity to respond to the imposition of sanctions for their conduct. *See id.* (stating that less process is due when a relatively small monetary sanction is to be divided among several persons). The District Court therefore did not abuse its discretion in ordering counsel for EchoStar to pay Dominion its reasonable attorneys' fees of $62,686.02 plus the additional $750.

## IV. CONCLUSION

EchoStar has failed to show that the arbitration panel acted fraudulently or with a manifest disregard for the law. We therefore affirm the District Court's order confirming the final award. Because we also find EchoStar's appeal of the District Court's order to be frivolous, Dominion may file a motion seeking reasonable attorneys' fees within fifteen days of the filing of this opinion; EchoStar will then have fifteen days to respond. Finally, we conclude that the District Court did not abuse its discretion in awarding Dominion $63,436.02 in attorneys' fees and costs under 28 U.S.C. § 1927.