**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

PUBLISH

**March 13, 2006**

**UNITED STATES COURT OF APPEALS**

**Elisabeth A. Shumaker**
**Clerk of Court**

**TENTH CIRCUIT**

LAWRENCE J. STEINERT,

   Plaintiff,

 v.

WINN GROUP, INC.;
JAMES G. WINN,

   Defendants-Appellees.

------------------------

JOHN B. GAGE,

   Appellant.

No. 04-3392

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 98-CV-2564-CM)**

Submitted on the briefs:[*]

John B. Gage, Gage Law Firm, Overland Park, Kansas, Pro se-Appellant.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

J. Nick Badgerow, Jeannie DeVeney, Michael C. Leitch, Spencer, Fane, Britt & Browne LLP, Overland Park, Kansas, for Appellees.

Before **McCONNELL**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

**McCONNELL**, Circuit Judge.

This is an appeal from a district court order awarding appellees attorney fees under 28 U.S.C. § 1927 against plaintiff's attorney, pro se appellant John Gage. Gage argues that (1) the award was inconsistent with the district court's denial of fees under 42 U.S.C. § 1988 and Fed. R. Civ. P. 11; (2) the award violated due process; (3) § 1927 applies only to the multiplication of proceedings and not to the initiation of proceedings; (4) § 1927 was inapplicable to punish his numerous requests for extensions of time; and (5) appellees' motion for fees violated various procedural rules. Finding partial merit in Gage's third argument, we affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

Lawrence Steinert retained attorney Gage to sue James Winn and The Winn Group, Inc. (collectively, "Winn"). Gage filed a complaint in federal court in December 1998, and served it in April 1999. He alleged that Winn offered to represent Steinert in finding work as an actuary. Steinert apparently accepted and was notified of a job opportunity with Scruggs Actuarial Service, Inc., located in

-2-

Texas. During an interview with Scruggs, Steinert was allegedly "induced through fraud to provide Scruggs with fifteen . . . hours of actuarial services" as part of a conspiracy between Scruggs and Winn "to obtain slave labor." Aplt. App. at 7D. Steinert signed a "secrecy agreement," but he refused to sign an employment contract because it contained a provision requiring that he "reimburse Scruggs . . . for any recruiting fee" if the employment relationship ended within three years. *Id.* Although Steinert never became a Scruggs employee, he filed a wage claim with the Texas Work Force Commission for the work performed during the interview. Scruggs later sued Steinert in state court, claiming a breach of the secrecy agreement.

Based on these allegations, Gage formulated nine claims for relief against Winn: (1) violation of the "Kansas Private Employment Agency Act," (KPEA) *id.* at 7F;[1] (2) violation of the "Texas Personnel Employment Services Act," (TPEA) *id.* at 7H;[2] (3) breach of fiduciary duties; (4) breach of the covenant of good faith and fair dealing; (5) negligence; (6) "exposing plaintiff to litigation with . . . Scruggs," *id.* at 7M; (7) fraud; (8) conspiracy; and (9) violation of 42 U.S.C. §§ 1983 and 1985 regarding, among other things, "plaintiff's right against involuntary servitude and peonage," *id.* at 7P.

---

[1]  Kan. Stat. Ann. §§ 44-401 through 44-412 (2000).

[2]  Tex. Rev. Civ. Stat. Ann. art. 5221a-7 (Vernon 1987 & Supp. 2002) (repealed 2003).

On April 26, 1999, Winn answered and moved to dismiss the KPEA claim, the fiduciary duty claim, the good-faith-and-fair-dealing claim, the litigation-exposure claim, the Title 42 claims, and a portion of the TPEA claim. In response, Gage embarked on a five-month extension-seeking campaign, during which he requested nine extensions of time to file an opposition to Winn's motion to dismiss. The requests cited Gage's problems with support staff, computers, office equipment, "and other problems too numerous to detail," Aplt. App. at 88, as well as family illnesses, fatigue, personal doctor visits, responsibilities on other cases, the complexity of the instant case, attendance at a legal convention, and a camping trip with his son. Gage also sought six extensions of time to file a motion for leave to amend or add parties, five extensions to make Fed. R. Civ. P. 26(a) initial disclosures, four extensions to respond to a demand for documents, three extensions to provide medical, employment and tax releases, three extensions to identify authority for any attorney fee award, two extensions to serve a preliminary witness list, and two extensions to file a certificate of financial interest. Winn's counsel agreed to many of the extensions and the district court expressly granted most of them, citing good cause or excusable neglect, and sometimes both. Most of the extension requests violated Rule 6.1(a)

of the United States District Court Rules for the District of Kansas, as the requests were made after the previously extended deadlines.[3]

But on October 15, 1999, Winn's counsel moved to dismiss for failure to prosecute. On October 20, the district court reviewed the litigation's history and stated:

> The Court recognizes that some of plaintiff's requested extensions, viewed in insolation, may have been properly based on time constrictions or excusable neglect. A review of the entire course of the litigation, however, shows a pattern of neglect which the Court cannot characterize as excusable.

Aplt. App. at 104. Nevertheless, the district court declined to dismiss the case, and instead gave Gage forty-eight hours to (1) file any motion to amend/add parties and any opposition to Winn's April motion to dismiss, and (2) provide initial disclosures and respond to Winn's production demand. But the court cautioned Gage that it might "order that plaintiff and/or his counsel pay the costs and attorneys' fees attributable to their default" if Gage failed to timely comply. Aplt. App. at 105.

---

[3] The tardy requests also violated the district court's scheduling order, which provided that "[a] party seeking additional time of more than three days to perform an act shall file and serve a motion no later than three business days before the expiration of the specified time." Aplee. Supp. App. at 14.

On October 22, 1999, Gage filed a motion for leave to amend the complaint by adding four more claims against Winn[4] and adding Scruggs as a defendant facing ten claims.[5] In the motion, Gage revealed for the first time that the "primary factors" causing the delays in the case were his difficulties in obtaining a determination from Steinert and his Texas counsel regarding their intent to proceed against Winn and Scruggs in state court. Aplt. App. at 182D.[6] The district court denied leave to amend.

Gage also filed a seventy-seven page opposition to Winn's April motion to dismiss. Therein, Gage conceded that his client's 42 U.S.C. § 1983 claim failed because there was no state action. But Gage devoted fourteen pages to arguing

---

[4] Gage sought to add claims against Winn for racketeering, conspiracy to commit malicious prosecution and to violate the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (FLSA), and retaliation for invoking the FLSA.

[5] Gage sought to add claims against Scruggs for fraud, malicious prosecution, violating 42 U.S.C. § 1985(2) and (3), breach of the good-faith-and-fair-dealing covenant, retaliation for invoking the FLSA, and conspiracy to commit fraud, malicious prosecution and to violate the TPEA and FLSA.

[6] Specifically, Gage stated: "Now that the difficulties experienced by plaintiff's counsel in attempting to obtain a determination from plaintiff and his counsel in the Texas actions with respect to the extent to which they intended to litigate their claims against not only Scruggs but present defendants in that state have been resolved and a determination has been made to proceed with all claims against all defendants in this Court, plaintiff's counsel feels free to relate to this Court how those problems of communication and resolution of matters relating to the two Texas actions and not only whether to proceed in a new one but how to coordinate that action with this one were the primary factors behind significant delays of plaintiff in this case . . . ." Aplt. App. at 182C-182D.

that Winn and Scruggs were liable under 42 U.S.C. § 1985(2)[7] and (3).[8] Specifically, regarding subsection (2), Gage argued that Winn and Scruggs had conspired to sue Scruggs' employees and Steinert in state court "to keep present employees cowering, captive, and unable to mount any challenges to their status as peons based upon the debt bondage Scruggs has put into effect through [its employment] contracts." Aplt. App. at 169. Regarding subsection (3), Gage argued that Winn and Scruggs had conspired to violate Steinert's "constitutional right against involuntary servitude and peonage, both of which are regarded as badges of slavery."[9] Id. at 171.

Gage then embarked on another extension-seeking campaign. He untimely sought more time to oppose a motion to compel the execution of a medical release

_____

[7]  Section 1985(2) provides a monetary remedy for conspiracies to, among other things, intimidate federal court witnesses or "deny any citizen the equal protection of the laws" through interference with the "due course of justice in any State or Territory."

[8]  Section 1985(3) provides a monetary remedy if, among other things, "two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws . . . ."

[9]  Gage described the § 1985(3) claim as having no racial component and no class-based component other than the class of persons who "were conned by Scruggs at the last minute into signing a contract of adhesion . . . requiring those employees to reimburse Scruggs for a recruiting fee." Aplt. App. at 180.

form.  He resurrected his prior excuses and added that he had suffered two car accidents, "litigat[ed] . . . the dissolution of his earlier office-sharing arrangement," *id.* at 277, experienced marital difficulties, and struggled with "other problems too numerous and personal to mention," *id.* at 278.  After his own suggested deadline expired, Gage sought to extend the time even further, complaining of a "total computer breakdown."  *Id.* at 281.  Even after the district court ordered Gage to produce the executed release, Gage failed to comply, prompting a motion to dismiss from Winn.

Gage also sought an extension in which to oppose a motion to compel the execution of an employment-records release form, describing at length his "continuing and taxing time problems in maintaining his workload."  *Id.* at 292.  And nearly one month after the scheduling order's date for the close of discovery, Gage moved to extend the deadlines for disclosing expert witnesses, propounding written discovery, and completing all discovery.  He cited staffing problems and his recent diagnosis with "adult Attention Deficit and Hyperactivity Disorder." *Id.* at 361.  Gage also stated that he had telephoned Winn's counsel and offered to dismiss the case because Steinert "could not litigate in two different states," *id.* at 362, but that Winn's counsel responded by insisting in a letter that dismissal be conditioned on the payment of Winn's fees and costs.  In the letter, dated January 10, 2000, Winn's counsel commented that "the Court is empowered to

award attorneys' fees under 28 U.S.C. § 1927 and Rule 11," and that he would be seeking fees under those provisions. *Id.* at 1214.

On January 27, 2000, the district court granted in part and denied in part Winn's April 1999 motion to dismiss. The court dismissed Steinert's § 1985 claims, observing that conspiracies motivated by economic animus are not actionable and that there were no allegations of discrimination similar to racial bias. Also dismissed were Steinert's KPEA, § 1983, and litigation-exposure claims, as well as a portion of Steinert's TPEA claim.

On March 17, 2000, facing another motion to compel and his client's scheduled deposition, Gage moved to dismiss the case with prejudice, stating that Steinert was unable to continue financially. The district court granted the motion, dismissed the case, and on August 3, 2000, entered judgment in Winn's favor.

On August 11, 2000, Winn filed a two-page "Motion for Award of Attorney's Fees and for Discovery Related Thereto," citing 42 U.S.C. § 1988 and Fed. R. Civ. P. 41(a)(2). Aplt. App. at 416. On September 26, Winn filed a thirteen-page document entitled "Suggestions in Support" of the motion, again citing § 1988 and Rule 41(a)(2), but adding 28 U.S.C. § 1927 as justifying a fee award against Gage primarily for multiplying the proceedings by seeking numerous extensions of time, but also for asserting frivolous claims. Aplt. App. at 422. Winn asked the court to either "require plaintiff and/or his attorney" to

pay fees or allow him to depose Steinert regarding the frivolity of his claims and to then supplement the Suggestions. Filed contemporaneously with the suggestions was a "Statement of Consultation," indicating that Winn's counsel had informally tried to resolve the fee issue by letter on September 15 and that Gage did not respond. Gage filed an opposition to the fees motion and suggestions, disputing the availability of § 1927 fees.

On September 6, 2001, the district court granted Winn's request to depose Steinert, but limited the scope to Winn's "assertion of entitlement to attorney's fees pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, and under the exception to the American Rule." Aplt. App. at 635. The district court further ruled that Winn's fee request was "mooted pending completion of the post-dismissal discovery," but that Winn could resubmit the briefs after Steinert's deposition. *Id.* Gage unsuccessfully sought reconsideration or a protective order to minimize Steinert's expenses in traveling to the deposition.

During the deposition, which took place on April 24, 2002, Steinert testified that he paid no placement fee to either Winn or Scruggs, stayed through the fifteen-hour interview "to be polite" and because he "thought that there was a job at the end of the rainbow," Aplt. App. at 754, but never entered into employment with Scruggs. Afterward, Winn resubmitted the fee request by filing an eighteen-page "Suggestions in Support of Defendants' Renewed Motion" on

May 24, 2002. *Id.* at 678. Therein, Winn again argued entitlement to attorney fees under 28 U.S.C. § 1927 primarily "because [Gage] multiplied the proceedings in this case unreasonably and vexatiously" by seeking numerous extensions of time, *id.* at 692, but also because Gage had "assert[ed] frivolous claims," *id.* at 694. Winn again asked the court to "require plaintiff and/or his attorney" to pay fees. Aplt. App. at 695. Gage filed an opposition, again arguing against the imposition of § 1927 fees.

On March 17, 2003, the district court ruled that an award of fees against Gage was warranted under § 1927 for two reasons. First, the court found that Gage's "decision to move forward with [the 42 U.S.C. §§ 1983 and 1985] claims when no clear legal basis supported them multiplied the proceedings in this case, resulted in an increase in the cost of the proceedings, and was unreasonable and vexatious." Aplt. App. at 1038. Second, the court found that Gage's requested extensions multiplied the proceedings by "approximately 495 days," unreasonably and vexatiously increasing the costs of the proceedings. *Id.* at 1039. The court ordered Winn's counsel to account for the fees expended in defending against the Title 42 claims and responding to Gage's extension requests. Gage unsuccessfully sought reconsideration.

Winn's counsel accounted for $22,258.79 in fees. After reviewing Winn's counsel's records and Gage's objections, the district court reduced the figure and sanctioned Gage $20,677.22 in August 2004. Gage appeals.[10]

## DISCUSSION

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

> Sanctions under § 1927 are appropriate when an attorney
> acts recklessly or with indifference to the law. They
> may also be awarded when an attorney is cavalier or
> bent on misleading the court; intentionally acts without a
> plausible basis; [or] when the entire course of the
> proceedings was unwarranted.

---

[10] To the extent that Gage's notice of appeal purports to identify Steinert as a party challenging the fee award, Gage concedes that Steinert is not an aggrieved party with standing to appeal. And insofar as the notice of appeal designates the August 2000 order granting Steinert's motion to dismiss the case, denying Winn's motion to condition dismissal on discovery and an attorney fee award, and stating that Winn "will have ample opportunity to establish entitlement to attorney fees," Aplt. App. at 414, Gage states that he only challenges the order's fee component. Interlocutory fee rulings that culminate in the final and appealable fee award are reviewable on appeal from that award. *See Am. Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, 428 F.3d 921, 924 (10th Cir. 2005) (observing that an award of attorney fees is final and appealable when reduced to a sum certain); *Montgomery v. City of Ardmore*, 365 F.3d 926, 934 (10th Cir. 2004) (recognizing that an appeal from a final judgment permits an attack against any nonfinal order or ruling leading up to it).

-12-

*Dominion Video Satellite, Inc. v. Echostar Satellite L.L.C.*, 430 F.3d 1269, 1278 (10th Cir. 2005) (quotations and citations omitted; alteration in original). We review a district court's award of § 1927 sanctions for an abuse of discretion. *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 265 (10th Cir. 1995). But "we review de novo any statutory interpretation or other legal analysis underlying the district court's decision concerning attorneys' fees." *AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1527 (10th Cir. 1997).

## I. Section 1927 as an Independent Basis for Sanctions

Gage first argues that the district court's imposition of § 1927 sanctions is incompatible with its rejection of sanctions under 42 U.S.C. § 1988 and Fed. R. Civ. P. 41(a)(2). The court's entire explanation for selecting § 1927 over § 1988 and Rule 41(a)(2) is contained in a single sentence: "Having examined the three bases set out by [Winn] in support of [the] request for attorneys' fees, the parties' arguments, and the relevant statutory and case law, the court finds that an award of attorneys' fees in this case is appropriate only under 28 U.S.C. § 1927." Aplt. App. at 1035-36. We reject Gage's all-or-nothing argument.

Section 1988(b) allows fees to be awarded to the party who prevails on or against claims brought under civil rights statutes like 42 U.S.C. §§ 1983 and 1985. But when a defendant prevails, he "may recover an attorney's fee only where the suit was vexatious, frivolous, or brought to harass or embarrass the

-13-

defendant." *Hensley v. Eckerhart*, 461 U.S. 424, 429 n.2 (1983). Rule 41(a)(2), on the other hand, allows an attorney fee award as a term or condition of a dismissal sought by the plaintiff. 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2366, at 309 (2d ed. 1995). But if the dismissal is with prejudice, attorney fees may be imposed under Rule 41(a)(2) only in "exceptional circumstances." *AeroTech*, 110 F.3d at 1528. An example of such a circumstance is "when a litigant makes a repeated practice of bringing claims and then dismissing them with prejudice after inflicting substantial litigation costs on the opposing party and the judicial system." *Id.*

Even if the district court's selection of § 1927 as the basis for sanctioning Gage could be equated with an affirmative ruling that there was no merit to a § 1988 or Rule 41(a)(2) sanction, such a ruling would not foreclose § 1927 sanctions. There are significant differences between the three fee provisions that permit imposing a § 1927 sanction while concurrently denying a § 1988 or Rule 41(a)(2) sanction. For instance, § 1988 is not available against attorneys, *Foster v. Mydas Assocs., Inc.*, 943 F.2d 139, 142 (1st Cir. 1991); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 276-77 (3d Cir. 1990); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 761 & n.9 (1980), whereas § 1927 is available against only attorneys, *Maguire Oil Co. v. City of Houston*, 143 F.3d 205, 208 (5th Cir. 1998). And although § 1927 targets the vexatious and

unreasonable multiplication of proceedings, a Rule 41(a)(2) sanction in a case dismissed with prejudice is reserved for the most exceptional of abuses, such as repeat filings and dismissals. Accordingly, we conclude that § 1927's operation in this case was not dependent upon the district court's imposition of § 1988 or Rule 41(a)(2) sanctions.

## II. Due Process

Gage next argues that he was sanctioned without due process because Winn never filed a motion for fees under § 1927. Gage points out that Winn's August 2000 "Motion for Award of Attorney's Fees and for Discovery Related Thereto" only mentioned § 1988 and Rule 41(a)(2). Although Winn's September 26, 2000 and May 24, 2002 "Suggestions" relied on § 1927, as well as § 1988 and Rule 41(a)(2), Gage maintains that those memoranda were not motions. Thus, he reasons, "[r]eliance of the district court on suggestions alone, rather than a motion under § 1927, denied [him] due process of law." Aplt. Br. at 17.

We need not dwell on this argument too long. "The basic requirements of due process with respect to the assessment of costs, expenses, or attorney's fees are notice that such sanctions are being considered by the court and a subsequent opportunity to respond." *Dominion Video*, 430 F.3d at 1279 (quotation omitted). The precise procedural protections of due process vary, depending upon the

circumstances, because due process is a flexible concept unrestricted by any bright-line rules. *Id.*

Gage knew as early as October 1999, when the district court gave him forty-eight hours to file any motion to amend/add parties and an opposition to Winn's motion to dismiss, that his conduct could lead to sanctions. Winn's counsel reiterated that point in his January 2000 letter, even citing § 1927. And although Winn's August 2000 "Motion" for fees failed to cite § 1927, both of Winn's "Suggestions" in support of the motion sought to establish Gage's liability under the statute. Further, the district court ordered that Steinert be deposed regarding § 1927, and Gage attacked the statute's applicability on several occasions. We conclude that Winn's failure to cite § 1927 in the fees "Motion" did not deny Gage due process.

Gage also contends he lacked notice that § 1927 sanctions were being considered by the district court for filing frivolous claims. Although most of Winn's § 1927 argument concerned Gage's dilatory conduct, Winn concluded each § 1927 segment of the two "Suggestions" by stating that Gage "should be required to bear the expense" for "*assert[ing] frivolous claims*, provid[ing] no information required by the Rules and the Court, delay[ing] the case, impos[ing] on [Winn] substantial attorneys' fees and expenses and then *dismiss[ing] his*

*claims.*" Aplt. App. at 433 & 694 (emphasis added). We conclude that Gage had notice regarding the full extent of his § 1927 liability.

Additionally, Gage states that *Martens v. Thomann*, 273 F.3d 159 (2d Cir. 2001), applied the "procedural provisions of Rule 11 . . . to the imposition of sanctions pursuant to 28 U.S.C. § 1927." Aplt. Br. at 12-13. But *Martens* did no such thing. Rather, the Second Circuit in that case merely observed that the "imposition of sanction[s] under section 1927 . . . requires notice and an opportunity to be heard." *Id.* at 178 n.13. We decline Gage's invitation to hold that due process is thwarted when § 1927 is invoked with "other motions or requests," Fed. R. Civ. P. 11(c)(1)(A), or when the offending party is not given a "safe harbor" in which to avoid sanctions by withdrawing the challenged claim, Fed. R. Civ. P. 11 Advisory Committee's Note (1993 amendments). In so declining, we join the Second Circuit in expressly recognizing that "[s]ection 1927 contains no counterparts to the safe harbor and separate motion requirements of Rule 11." *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997); *see also Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) (stating that, "[u]nlike Rule 11 sanctions, a motion for excess costs and attorney fees under § 1927 is not predicated upon a 'safe harbor' period").

Nor will we hold that § 1927 is necessarily inoperable "after disposition of a case," Aplt. Br. at 21. Although the Third Circuit has adopted a "supervisory

rule" that sanction issues under Rule 11 and the inherent power of the court must be decided before or concurrent to the final judgment, and hinted that the rule applies to § 1927, *see Prosser v. Prosser*, 186 F.3d 403, 405-06 (3d Cir. 1999), we see no reason to extend such a rule to § 1927 in this circuit. Unlike Rule 11, the application of § 1927 may become apparent only at or after the litigation's end, given that the § 1927 inquiry is whether the proceedings have been unreasonably and vexatiously multiplied. Even the Third Circuit seems to recognize that Rule 11 does not require such a "protracted scrutiny," *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 99 (3d Cir. 1988), because Rule 11 focuses only on a challenged pleading or written motion. Inherent-power sanctions are also capable of a narrow focus, as the inquiry is whether a person has abused the judicial process by acting "in bad faith, vexatiously, wantonly, or for oppressive reasons," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quotations omitted). But we need not decide whether that capability necessarily allows a court to reach abusive conduct earlier through its inherent power than through § 1927. We simply conclude that § 1927 sanctions are not untimely if sought or imposed after final judgment. *See Ridder*, 109 F.3d at 297.

With that said, however, resort to § 1927 should not be unnecessarily or unreasonably delayed. In this case, Winn promptly sought § 1927 fees after the dismissal and again after Steinert's deposition, and the district court decided the

issue after briefing, discovery, and then more briefing. Although we believe that the district court should have curtailed the parties' nearly four-year odyssey over attorney fees, we will not invalidate the fee award on the record before us, which shows that the parties filed numerous and extensive briefs on the fee issue, and that Gage sought at least ten extensions of time to comply with fee briefing deadlines.

### III. Initiation versus Multiplication

Gage next argues that § 1927 only applies to the multiplication of proceedings and not to the initiation of proceedings. This argument has support. *See, e.g.*, *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999); *Zuk v. E. Pa. Psychiatric Inst.*, 103 F.3d 294, 297 (3d Cir. 1996); *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). *But see In re TCI, Ltd.*, 769 F.2d 441, 448 (7th Cir. 1985). Gage maintains, then, that the district court erred in sanctioning him for filing the initial complaint. We agree, to the extent that the court actually did so. The court stated that the proceedings had been multiplied by Gage's "decision to move forward with [the § 1983 and § 1985] claims when no clear legal basis supported them," Aplt. App. at 1038, and then directed Winn to account for the fees incurred "in connection with [the] defense of the dismissed § 1983 and § 1985 claims." *Id.* at 1041. But afterward, when reviewing Winn's counsel's accounting, which included fees for drafting the motion to dismiss, the

court said that Gage had violated § 1927 by "asserting" the § 1983 and § 1985 claims. *Id.* at 1228. This court has encountered similarly imprecise language before.

In *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985), this court affirmed a § 1927 sanction against an attorney who, according to the district court, had "continued to assert" bogus claims "long after it would have been reasonable and responsible to have dismissed the claims," and who "commenced the action . . . without grounds and thereafter maintained 'the litigation in bad faith, vexatiously, wantonly and for oppressive reasons.'" This court further identified a bad faith multiplication of proceedings in the attorney's filing of an amended complaint prior to receiving discovery essential to understanding one of the defendant's roles in the litigation. *Id.* at 1166.

Insofar as *Dreiling* includes "commenc[ing] the action without grounds" amongst the court's § 1927 reasoning, we do not think the court meant to say that § 1927 liability could be imposed for initiating meritless litigation. Rather, it appears the court either included this language as a precursor to its discussion of the merits or simply incorporated the district court's use of inherent-power terminology, which would have been appropriate for discussing the bad faith initiation of litigation, *see Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986). In any event, we read *Dreiling* in line with other courts that recognize

-20-

§ 1927's incentive for attorneys to regularly re-evaluate the merits of their claims and to avoid prolonging meritless claims, *see, e.g., Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006); *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988), but we reiterate that § 1927 covers only the multiplication of "the proceedings in any case," 28 U.S.C. § 1927.[11]  This unambiguous statutory language necessarily excludes the complaint that gives birth to the proceedings, as it is not possible to multiply proceedings until *after* those proceedings have begun.[12]  To the extent that the Seventh Circuit held otherwise in *In re TCI, Ltd.*, 769 F.2d at 448, we find the court's reasoning questionable.  There, the Seventh Circuit looked beyond § 1927's language to (1) a failed amendment that would have required a warning prior to sanctions; and (2) the "new" Fed. R. Civ. P. 11, which, the court observed, "requires the

---

[11]    In *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337 (10th Cir. 1998), we relegated this language to a footnote while mentioning that defendant's trial counsel had requested § 1927 sanctions for the "filing of the complaint."  *Id.* at 1342 & n.4 (italics omitted).  Although we reversed the district court's sanction award, which was based on plaintiff's counsel's failure to research the law "once the case was removed" to federal court, *id.* at 1343, and his "failure to cite [controlling precedent] in any motion or response," *id.* at 1342, we did not attempt to dispel the notion that § 1927 can reach the filing of an initial complaint.  Consequently, we may have inadvertently intimated that § 1927 can reach more than the multiplication of proceedings.

[12]    We do not address here whether "proliferative uses of complaints . . . fall within the statute."  Gregory P. Joseph, Sanctions:  The Federal Law of Litigation Abuse 389 (3d ed. 2000) (suggesting that § 1927's language would not be offended, for example, by sanctioning counsel who had filed the same meritless complaint in other courts).

attorney to take care before filing a complaint." *Id.* We see no reason to look past § 1927's clear language. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 187 n.8 (2004) (recognizing "longstanding precedents that permit resort to legislative history only when necessary to interpret ambiguous statutory text").

Because Gage acquiesced in Winn's first and only attempt to dismiss the § 1983 claim, we cannot say that Gage multiplied the proceedings after pleading this claim in the complaint. Consequently, the district court abused its discretion in awarding sanctions based on this claim. But Gage did oppose the dismissal of the § 1985(2) and (3) claims and even sought to expand their scope in the motion to amend/add parties, requiring Winn to further address § 1985's viability in the reply in support of dismissal and in the response to the motion to amend/add parties. Given the patently meritless nature of the § 1985 claims,[13] we conclude

---

[13]    *See United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 837 (1983) (observing that § 1985(3) was not intended "to reach conspiracies motivated by bias towards others on account of their economic views, status, or activities"); *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (stating that § 1985(3) requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action"); *Kush v. Rutledge*, 460 U.S. 719, 726 (1983) (recognizing that § 1985(2) proscribes conspiracies to interfere with the due course of justice in any state because of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus" and conspiracies to interfere with federal proceedings); *Pollock v. Williams*, 322 U.S. 4, 17-18 (1944) (commenting that, "in general the defense against oppressive hours, pay, working conditions, or treatment is the right to change employers," rather than the rights guaranteed by the Thirteenth Amendment against slavery and involuntary servitude); *Butler v. Perry*, 240 U.S. 328, 332 (1916) (stating that

(continued...)

that Gage's conduct in pursuing those claims in the face of Winn's motion to dismiss multiplied the proceedings recklessly and with indifference to well-established law.

We stress, however, that § 1927 could have been applied only to Gage's conduct in attempting to preserve and advance the § 1985 claims beyond the complaint. Gage did nothing with these claims until after Winn moved to dismiss. Thus, the district court abused its discretion to the extent it awarded fees based on Winn's counsel's preparing the April 1999 motion to dismiss. Accordingly, this matter will be remanded for the district court to deduct from the sanctions award the fees generated by Winn's counsel in attacking the Title 42 claims via the April 1999 motion.

---

[13](...continued)
the Thirteenth Amendment "was adopted with reference to conditions existing since the foundation of our government, and the term 'involuntary servitude' was intended to cover those forms of compulsory labor akin to African slavery which, in practical operation, would tend to produce like undesirable results").

**IV. Extension Requests as a Basis for § 1927 Sanctions**

Gage states that he cannot be sanctioned under § 1927 for seeking extensions of time because "each order granting an extension found 'good cause' or 'excusable neglect,'" Aplt. Br. at 27, and that such findings do not comport with an unreasonable or vexatious multiplication of the proceedings. We disagree. In requesting every extension from May 1999 through October 1999, Gage concealed from the district court the "primary factors" responsible for his delay. Aplt. App. at 182D. The court's findings of excusable neglect and good cause are meaningless given this deception. Furthermore, on October 20, 1999, when the court looked back upon the "entire course of the litigation," it found a pattern of inexcusable neglect. *Id.* at 104.

Gage also argues that § 1927 is not available to punish excessive extension requests. Again, we disagree. Section 1927 targets conduct that multiplies the proceedings, which, when "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1342 (10th Cir. 1998) (quotation omitted). We have no difficulty deciding that Gage's numerous and predominantly untimely requests for extensions of time met this standard. *See Julien v. Zeringue*, 864 F.2d 1572, 1575-76 (Fed. Cir. 1989) (imposing § 1927 sanctions on appeal against an

-24-

attorney who, among other things, had "continually missed deadlines" and "requested at least 10 extensions of time to file his briefs").

## V. Rule Compliance

Finally, Gage contends that Winn's motion for fees violated Rules 7(b)(1) and 54(d)(2)(B) of the Federal Rules of Civil Procedure by not specifying the judgment and the basis for the ultimate award. But the purpose of Rule 7 is notice, *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 104 (6th Cir. 1995), which Gage had, *see supra* Part II, and Rule 54(d)(2)(B) is not applicable to 28 U.S.C. § 1927, *see* Fed. R. Civ. P. 54(d)(2)(E).

Gage also argues that Winn violated local rule 54.2, which requires the party seeking a fee award to first attempt an informal resolution and, if unsuccessful, to file a "statement of consultation" and a supportive memorandum within thirty days of filing the motion, U.S. Dist. Ct. Rules, D. Kan. Rule 54.2. Although Winn's statement and memorandum were filed sixteen days late, the district court found the late filing to be excusable, and we see no abuse of discretion in that regard.[14]

---

[14] To the extent Gage brings to our attention Winn's counsel's "fail[ure] to initiate consultation . . . within 30 days after filing the[ ] motion," Aplt. Br. at 24, we note that Winn's counsel attempted consultation within thirty-five days of filing the motion, but Gage simply "disregarded" the attempt because it was late, Aplt. App. at 521. Gage's disregard of the consultation attempt, even though untimely, was not consistent with the spirit of good faith required whenever

(continued...)

CONCLUSION

Section 1927 was properly invoked to punish the serious and standard disregard for the orderly process of justice that occurred when Gage filed excessive and tardy extension requests and sought to keep the § 1985(2) and (3) claims alive. But since the district court went slightly further, and sanctioned Gage for simply pleading those claims, we AFFIRM IN PART, REVERSE IN PART, AND REMAND for proceedings consistent with this opinion.[15] Winn's motion for attorney fees on appeal is DENIED.

---

[14](...continued)
counsel must endeavor an informal resolution. *Cf. Halas v. Consumer Servs., Inc.*, 16 F.3d 161, 165 (7th Cir. 1994) (stating that the intent of a local discovery rule requiring consultation between counsel was to require a good faith effort in informal dispute resolution).

[15] We remind the district court that on remand sanctions under either its inherent authority or 28 U.S.C. § 1927 are available to address any further abuse of the judicial process.