FILED
United States Court of Appeals
Tenth Circuit

July 22, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

STEPHEN C. ROTH, as an individual;
JEAN GUMESON,

        Plaintiffs,

v.

DENNIS SPRUELL; MATT
BUFFINGTON; DANNY DUFUR;
JEFF COLEMAN; TIM ROWELL;
TOM HALPER; MIKE MEUER; ROY
C. LANE; JERRY MARTIN; AL
BELL; SYDNEY DUKE SCHIRARD;
CITY OF CORTEZ, a public
corporation; CITY OF DURANGO, a
public corporation; DOLORES
BOARD OF COUNTY
COMMISSIONERS, a public
corporation; LA PLATA COUNTY
BOARD OF COUNTY
COMMISSIONERS, a public
corporation,

        Defendants-Appellees,

and

MICHAEL F. GREEN; BROOKS
BENNETT; HUGH RICHARDS; SAM
HAGER; KEN BRACKETT; JOEY M.
CHAVEZ; DALE WOOD, individually
and in their official capacities; TOWN
OF MOUNTAIN VILLAGE, a public
corporation; MONTEZUMA
COUNTY, BOARD OF COUNTY
COMMISSIONERS,

No. 09-1453
(D.C. No. 1:02-CV-01116-LTB-CBS)
(D. Colo.)

Defendants.

ROBERT J. MULHERN,

Attorney-Appellant.

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

---

This is third time this case has come before this court. The only issue remaining for consideration is whether the district court properly calculated the amount of sanctions Attorney-Appellant Robert J. Mulhern should pay to the Cortez, Durango, and Buffington Defendants[1] pursuant to 28 U.S.C. § 1927. We affirm in part and reverse and remand in part.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The "Cortez Defendants" are the City of Cortez, Dennis Spruell, Danny Dufur and Roy C. Lane; the "Durango Defendants" are the City of Durango, Al Bell and Jeff Copeland; and the "Buffington Defendants" are Matt Buffington, Tim Rowell, Tom Halper, Mike Meuer, Sheriff Sydney Schirard, Sheriff Jerry Martin, and the Boards of County Commissioners for the Counties of Dolores and La Plata.

## I. Background

In June 2002, Mr. Mulhern filed a civil rights complaint under 42 U.S.C. § 1983 on behalf of his clients, Stephen Roth and Jean Gumeson, against twenty-six named defendants and fifty unknown Doe defendants, alleging that defendants created, established, and executed an unconstitutional drug checkpoint that ultimately resulted in plaintiffs being unlawfully stopped, detained, searched, and arrested. The circumstances leading to plaintiffs' arrest involved a "ruse" checkpoint. Signs along the highway indicated that a drug checkpoint would occur in a few miles, but no such checkpoint existed. Officers were stationed in unmarked cars along the highway by the signs. They were told to watch for suspicious behavior and to stop any cars where the occupants were exhibiting such behavior. Officers observed a female occupant in Mr. Roth's car throw something out of the window after the car passed one of the signs. Officers found drug paraphernalia in the package that was thrown from the car and found drugs in the trunk of the car once it was stopped and searched. When the § 1983 complaint was filed, Mr. Roth was still involved in state criminal proceedings that arose out of the allegedly illegal search.

In September 2002, the named defendants moved to dismiss the complaint and/or for summary judgment, arguing that (1) the court lacked jurisdiction over

Mr. Roth's claims because of the *Rooker-Feldman*[2] doctrine; (2) the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994) barred recovery of damages where plaintiffs' convictions had not been reversed or otherwise declared invalid; (3) plaintiffs failed to state a claim for relief under Fed. R. Civ. P. 12(b)(6); (4) the undisputed facts established that the "ruse" checkpoint was constitutional; and (5) there were no facts showing personal involvement by the defendants.

On February 3, 2003, the Durango Defendants sent Mr. Mulhern a letter notifying him of a recent case, *United States v. Flynn*, 309 F.3d 736 (10th Cir. 2002), involving similar factual circumstances in which this court held that a "ruse" police checkpoint was constitutional. The letter stated that the *Flynn* case appeared to be good precedent for the dismissal of plaintiffs' claims and that this seemed like an opportune time for Mr. Mulhern to re-examine the claims that he had brought on behalf of his clients to determine whether he had a good-faith basis under Fed. R. Civ. P. 11 to go forward. The Durango Defendants indicated that it was their view that plaintiffs had no meritorious basis upon which to proceed, and they requested that plaintiffs' claims be dismissed.[3]

Plaintiffs did not dismiss their claims at that time. Instead, they filed a response to defendants' motions to dismiss in March 2003. The district court

---

[2]    *See Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

[3]    The Cortez Defendants and Buffington Defendants sent a similar letters to Mr. Mulhern on February 5, 2003, and September 15, 2003.

granted the motions to dismiss and dismissed the action in December 2003. After the dismissal, the Cortez, Durango, and Buffington Defendants, as well as other defendants that are not parties to this appeal, moved for sanctions against Mr. Mulhern under Rule 11 and 28 U.S.C. § 1927. The district court granted the motions for sanctions and Mr. Mulhern appealed.

In the first appeal, we concluded that we lacked jurisdiction over the appeal from the sanctions order because the district court had not yet determined the amount of sanctions to be awarded to one set of defendants. *See Roth v. Green*, 123 F. App'x 871, 874 (10th Cir. 2005) (*Roth I*). In the second appeal, Mr. Mulhern appealed from the district court's order sanctioning him under Rule 11 and § 1927. *See Roth v. Green*, 466 F.3d 1179, 1182 (10th Cir. 2006) (*Roth II*).

In *Roth II*, we considered Mr. Mulhern's challenge to the merits of the district court's decision awarding sanctions. We concluded that:

> If there were any doubts about the legality of the ruse utilized by defendants in this case (and it appears that, even prior to *Flynn*, the legality of such a ruse was clear), those doubts should have ceased when we issued *Flynn*. Mulhern, in turn, upon receiving notice of the *Flynn* decision (and the record indicates he was repeatedly advised of the decision by the defendants in their respective letters to him), should have voluntarily dismissed the complaint. Stated differently, it was unreasonable, and a violation of his obligations as a licensed attorney, to continue to pursue the claims after the issuance of *Flynn*.
>
> . . .

-5-

In sum, the district court did not abuse its discretion in concluding that Mulhern violated the provisions of both Rule 11 and § 1927 in filing and pursuing the § 1983 claims on behalf of Roth and Gumeson.

*Roth II*, 466 F.3d at 1189-90.

Next, we considered whether defendants had followed the procedures outlined in Rule 11. Because defendants had not done so, we concluded that the district court had abused its discretion in granting defendants' motions for sanctions under Rule 11. But because the district court had also awarded defendants fees under § 1927, we concluded that "the proper course is to reverse and remand to the district court to determine the proper amount of fees and costs to be assessed under § 1927 (i.e., 'the excess costs . . . and attorneys' fees reasonably incurred because of' his unreasonable and vexatious conduct)." *Roth II*, 466 F.3d at 1193.

On remand, the Cortez, Durango, and Buffington Defendants filed supplemental briefs in support of their original motions for sanctions. The magistrate judge held an evidentiary hearing and issued a report and recommendation. The magistrate judge recommended that the district court grant the motions for sanctions and assess the following attorneys' fees and costs against Mr. Mulhern:

A.    for the Cortez Defendants, attorneys' fees of $6,202.80 and costs of $346.93 incurred after February 3, 2003;

-6-

B.      for the Durango Defendants, attorneys' fees of $6,505.65 and costs of $1,647.34 incurred after February 3, 2003;

C.      for the Buffington Defendants, attorneys' fees of $12,402.45 and costs of $1,624.76 incurred after September 10, 2002.[4]

Mr. Mulhern filed objections to the magistrate judge's recommendation, but the district court ultimately adopted the recommendation and entered an order granting the motions for sanctions in the amounts determined by the magistrate judge.  Mr. Mulhern now appeals from that order.

## II.  Discussion

We review an award of sanctions under § 1927 for abuse of discretion. *Roth II*, 466 F.3d at 1187.  Section 1927 provides that:  "Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  As the magistrate judge explained in his recommendation, this court had already concluded in *Roth II* that sanctions under § 1927 were warranted; as a result, the only determination left for the district court was the amount of the sanctions.

---

[4]      This assessment of attorneys' fees reflects a ten-percent reduction by the district court of the fees requested by defendants.  The magistrate judge concluded that the attorneys' fees should be reduced by ten percent to reflect time entries that were not sufficiently informative or work that could not reasonably be attributed to Mr. Mulhern's violation of § 1927.  The defendants did not file any objections to the magistrate judge's report and recommendation.

In order to make a determination about the amount of sanctions, the district court needed to decide when Mr. Mulhern unreasonably and vexatiously multiplied the proceedings. For the Cortez and Durango Defendants, the district court concluded that the fees and costs incurred after February 3, 2003—the date on which Mr. Mulhern was notified of the *Flynn* decision—"were attributable to Mr. Mulhern's obdurate adherence to a legal theory that was no longer tenable." Aplt. App. at 14. For the Buffington Defendants, the district court concluded that Mr. Mulhern should be liable for the reasonable fees and costs incurred after September 10, 2002, when Mr. Mulhern "persisted in recklessly pursuing claims against those Defendants in the face of their well-supported motion to dismiss," in which those defendants indicated that they had not personally participated in the stop and search of the vehicle or plaintiffs' arrest. *Id*. at 14-15.

A. Constitutionality of § 1927

Although the only determination at issue before the district court on remand was the amount of fees and costs to be awarded, Mr. Mulhern now argues that he should not be sanctioned under § 1927 because the statute is unconstitutional on its face and as applied. But this court already determined in *Roth II* that the district court did not abuse its discretion in concluding that Mr. Mulhern's conduct was sanctionable under § 1927. *See Roth II*, 466 F.3d at 1190. We remanded solely for a determination of the amount of fees that could be attributed to that conduct. *See id*. at 1193, 1195. Mr. Mulhern's facial challenge to § 1927

-8-

represents a challenge to the district court's decision that Mr. Mulhern's conduct was sanctionable under § 1927. That issue was fully and finally litigated in *Roth II* and the Supreme Court denied Mr. Mulhern's petition for certiorari from our decision, *see Roth v. Green*, 522 U.S. 814 (2007). Accordingly, Mr. Mulhern may not bring a facial challenge to § 1927 at this stage in the proceedings when we are solely reviewing the district court's determination of the *amount* of the sanctions, not whether sanctions were proper under § 1927.

As for Mr. Mulhern's as-applied-challenge, because it can be read to encompass the district court's determination of the amount of fees on remand, we will consider it. Mr. Mulhern's main complaint appears to be that the district court's application of § 1927 violated his due process rights. But in *Braley v. Campbell*, 832 F.2d 1504, 1514 (10th Cir. 1987) (en banc), we explained that "[t]he basic requirements of due process with respect to the assessment of costs, expenses, or attorney's fees are notice that such sanctions are being considered by the court and a subsequent opportunity to respond." Those basic requirements of due process were met in this case—Mr. Mulhern was on notice that sanctions were being considered, and he had the opportunity to respond and to participate in a hearing on the issue.

Mr. Mulhern also complains that the district court should have considered his ability to pay and the other factors outlined in *White v. General Motors Corp.*, 908 F.2d 675, 684-85 (10th Cir. 1990), when the district court was determining

-9-

the amount of sanctions under § 1927. But *White* was a Rule 11 sanctions case. This court has recently "reject[ed]" a similar attempt by another attorney "to import several precedents concerning Rule 11 . . . into the context of 28 U.S.C. § 1927." *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205 (10th Cir. 2008). In *Hamilton*, this court specifically rejected the same argument advanced here by Mr. Mulhern, stating: "[W]e also reject Appellant's contention that the court's sanction award improperly failed to comply with our directive in *White* that a district court consider such factors as the minimum amount that will serve as a deterrent and the attorney's ability to pay." *Id*. at 1206. Mr. Mulhern acknowledges the existence of *Hamilton*, but asserts that it was erroneously decided and should be reversed. But this panel is bound by prior precedent unless there is an intervening en banc decision of this court or a superseding contrary decision by the Supreme Court. *See In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) (per curiam). Mr. Mulhern has failed to demonstrate that the district court's application of § 1927 was unconstitutional.

B. Objective standard

Mr. Mulhern argues that the district court erred because it applied an objective standard, as opposed to a subjective standard, to determine at what point his conduct became unreasonable. He claims that he acted in good faith. But this argument is also foreclosed by *Hamilton*, in which we explained that "§ 1927 does not require a finding of bad faith" and that "any conduct that, viewed

*objectively*, manifests either intentional or reckless disregard of the attorney's duties to the court, is sanctionable." 519 F.3d at 1202 (quotation omitted, emphasis added). Accordingly, the district court did not err in applying an objective standard to determine when Mr. Mulhern's conduct became unreasonable.

### C. Cortez Defendants

Regarding the fees awarded to the Cortez Defendants, Mr. Mulhern argues that the district court (1) used an incorrect starting date as to when he unreasonably multiplied the proceedings; (2) used an incorrect ending date for determining fees and costs; and (3) awarded amounts for non-reimbursable costs.

#### 1. *Starting Date for Fees*

The district court determined that Mr. Mulhern should be responsible for paying fees that defendants incurred after February 3, 2003—the date on which defendants notified Mr. Mulhern that this court had issued the *Flynn* case, that *Flynn* appeared to be dispositive of plaintiffs' claims, and that, in light of *Flynn*, "continued maintenance of this case is frivolous and groundless." Aplee. Supp. App. at 267. In *Roth II*, we stated that "upon receiving notice of the *Flynn* decision . . . [Mulhern] should have voluntarily dismissed the complaint" and that "it was unreasonable . . . to continue to pursue the claims after the issuance of *Flynn*." 466 F.3d at 1189. On remand, the magistrate judge quoted this language and then concluded that "consistent with the Tenth Circuit's analysis, . . . fees and

costs incurred by the Cortez [Defendants] after February 3, 2003 were attributable to Mr. Mulhern's obdurate adherence to a legal theory that was no longer tenable." Aplt. App. at 14.

Relying on our decision in *Steinert v. Winn Group, Inc.*, 440 F.3d 1214 (10th Cir. 2006), Mr. Mulhern argues that proceedings cannot be multiplied until an attorney files a response to a motion to dismiss. He contends that because he did not file a response to defendants' motions to dismiss until March 2003, he should not be responsible for any fees incurred up until that point. In *Steinert*, 440 F.3d at 1224-25, we concluded that § 1927 covers only the multiplication of the proceedings and necessarily excludes the complaint that gives rise to the proceedings. We therefore determined that counsel's "conduct in pursuing [the] claims in the face of [defendants'] motion to dismiss multiplied the proceedings recklessly and with indifference to well-established law," but that the district court abused its discretion to the extent it awarded fees based on the preparation of defendants' motion to dismiss. 440 F.3d at 1225-26. As a result, in *Steinert*, we remanded for the district court to deduct from the sanctions award the fees generated by defense counsel in preparing the motion to dismiss. *Id*. at 1226. But in *Steinert*, we did not instruct the district court to deduct the fees that defense counsel incurred from the date of the filing of the motion to dismiss to the date of the filing of the response to the motion to dismiss, which is what Mr. Mulhern is arguing for in this case.

Based on *Steinert*, the district court presumably could have started the clock for fees from the date of the filing of the motion to dismiss; instead, the district court used the date that Mr. Mulhern was notified of the *Flynn* decision, which occurred five months after defendants filed their motions to dismiss. At that point, we noted that "[i]f there were any doubts about the legality of the ruse utilized by the defendants in this case (and it appears that even prior to *Flynn*, the legality of such a ruse was clear), those doubts should have ceased when we issued *Flynn*." *Roth II*, 466 F.3d at 1189. Once Mr. Mulhern was notified of the *Flynn* decision, he should have voluntarily dismissed the complaint. By failing to do so, he continued to pursue plaintiffs' claims in a way that unreasonably and vexatiously multiplied the proceedings. Accordingly, the district court did not abuse its discretion in determining that Mr. Mulhern should be responsible for attorney's fees and costs incurred after February 3, 2003.

Mr. Mulhern also argues that the district court erroneously included fees in its total assessment that were incurred *on* February 3, 2003. He contends that the proper date to begin calculating fees would be February 4, 2003, because the district court ordered him to be responsible for costs incurred "*after* February 3, 2003," Aplt. App. at 14, 18 (emphasis added). Based on our review of the billing records, it does appear that the district court included fees that were incurred *on* February 3, 2003, as opposed to starting the calculation after that date. On remand, this error should be corrected.

## 2. *Ending Date for Fees*

The Cortez Defendants requested that they be awarded fees incurred until the date that the district court entered judgment dismissing all of the claims in December 2003. But Mr. Mulhern contends that the district court erred by awarding fees and costs through January 30, 2004. Defendants contend that Mr. Mulhern is incorrectly reading the time sheets and that the district court did not include any fees in the award for work done after the dismissal. *See* Aplee. Br. at 20. The district court did not indicate what the end date was for its award of fees and costs, but it appears after carefully reviewing the billing statements that the district court did award amounts through January 30, 2004, even though those fees were not requested by the defendants and they were incurred after the case was dismissed. Because defendants did not request fees and costs for work after the dismissal and because Mr. Mulhern did not take any action to multiply the proceedings after the district court granted the motions to dismiss on December 5, 2003, the district court abused its discretion by including amounts incurred after that date in its award of fees and costs.

## 3. *Non-reimbursable costs*

Mr. Mulhern contends that the district court erred in awarding costs for items that were not reimbursable under § 1927 because the only costs reimbursable under § 1927 are those listed in 28 U.S.C. § 1920. As we explained in *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 267 (10th Cir. 1995), "'Excess

Costs' recoverable under 28 U.S.C. § 1927 include only those enumerated in 28 U.S.C. § 1920, which lists the items that ordinarily may be taxed to a losing party." In this case, the district court awarded costs for legal research, telephone calls, facsimiles, postage, delivery service, and parking. None of these items are reimbursable as costs under § 1920.

Defendants appear to be arguing that the district court did not err because it was permissible for the court to award "costs and *other expenses* related to Mulhern's vexatious conduct," Aplee. Br. at 10. The statute does state that "excess costs, *expenses*, and attorneys' fees reasonably incurred" may be awarded. 28 U.S.C. § 1927 (emphasis added). We need not decide, however, whether the other items that were assessed as costs are reimbursable as expenses because defendants' sanctions motions requested only attorneys' fees and costs and did not ask for "expenses." Consistent with these requests, we indicated in *Roth II* that, on remand, the district court should determine "the proper amount of fees and costs to be assessed under § 1927." 466 F.3d at 1193. Consistent with this mandate, the district court's order assessed attorneys' fees and costs against Mr. Mulhern; there is no mention of an additional award for "expenses." *See* Aplt. App. at 18. Because the defendants only asked for costs and not expenses, and we directed the district court to assess costs and not expenses, the district court was limited in assessing costs to those items listed in § 1920. Accordingly,

the costs award must be reduced to include only those items that are reimbursable under § 1920.

D.  Durango Defendants

Mr. Mulhern asserts that the district court failed to be specific in its findings of fact and recommendations when it awarded fees and costs in favor of the Durango Defendants without the benefit of detailed contemporaneous time sheets.  Mr. Mulhern also asserts that the Durango Defendants waived their right to fees and costs by failing to timely submit detailed time sheets.  Both the Cortez and Buffington Defendants submitted detailed time sheets reflecting the fees and costs for the relevant time period.  The Durango Defendants submitted time sheets through December 31, 2002, but they did not submit any time sheets for 2003, which is the time period for which the district court ultimately awarded fees and costs.  Instead of submitting time sheets, the Durango Defendants submitted an affidavit that summarily stated that they incurred fees from February 3, 2003, in the amount of $7,218.50 and costs in the amount of $1,647.34.

The district court's task was to make "specific findings" that "sufficiently express the basis for the sanctions imposed to identify the excess costs reasonably incurred by the party to whom they will be due." *Hamilton*, 519 F.3d at 1203-04 (quotation omitted).  This task could not be accomplished without reviewing the actual billing sheets that detailed the fees and costs allegedly incurred by defendants. *Cf. Ramos v. Lamm,* 713 F.2d 546, 553 (10th Cir. 1983) (explaining

that "[t]he first step in calculating fee awards is to determine the number of hours reasonably spent by counsel" and that lawyers should "keep meticulous, contemporaneous time records to present to the court" if they intend to seek sanctions under 42 U.S.C. § 1988), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987).

Defendants offer no real rebuttal to Mr. Mulhern's argument. First, they assert that Mr. Mulhern did not raise this issue in the district court. That is not accurate. Mr. Mulhern argued this point in his objections to the magistrate judge's report and recommendation. *See* Aplt. Supp. App., Vol. II at 835, 846-49. Defendants next claim that "[a]ll defendants submitted contemporaneous records of time expended." Aplee. Br. at 19. That statement is not correct. The Durango Defendants did not submit any time records for 2003. *See* Aplee. Supp. App. at 275-76, 281-82; Aplee. Supp. App., Vol. II at 438-39, 441-47. Finally, defendants criticize the cases that Mr. Mulhern relies on to support his argument. While it is true that the cases Mr. Mulhern cites arise out of different attorneys' fee award provisions, defendants do not provide any case contrary to Mr. Mulhern's position—that a district court may not rely solely on a summary affidavit with a lump sum amount when determining reasonable fees and costs under § 1927. Accordingly, we conclude that the district court abused its discretion in awarding fees and costs to the Durango Defendants without reviewing their detailed time sheets.

E.  Buffington Defendants

Mr. Mulhern makes the same arguments with respect to the Buffington Defendants as he did with the Cortez Defendants.  He argues, first, that the district court used the wrong starting date for when he multiplied the proceedings; second, that the district court included fees that were incurred after the motions to dismiss were granted on December 5, 2003; and third, that the district court erred in awarding non-reimbursable costs.  As was the case with the Cortez Defendants, the district court abused its discretion in awarding fees and costs incurred after December 5, 2003, and in awarding costs that were not reimbursable as costs under § 1920.

With respect to the starting date, the district court used an earlier starting date for these defendants, concluding that they were entitled to fees incurred after September 10, 2002—the date when they filed their motion to dismiss.  The district court explained that the Buffington Defendants moved to dismiss the § 1983 claims "based upon their lack of personal participation in the stop and search of Mr. Roth's vehicle or in the arrest of Mr. Roth and Ms. Gumeson," and "[t]hat lack of personal participation distinguished the Buffington Defendants from the Cortez and Durango Defendants."  Aplt. App. at 14.  The district court noted that this court had stated in *Roth II* that "individuals who had no direct connection with or participation in the ruse checkpoint were not properly named as defendants in the complaint," which would encompass the Buffington

-18-

Defendants. *Id.* (quotations omitted). The district court found that Mr. Mulhern "should be liable for the reasonable fees and costs incurred by the Buffington Defendants when Plaintiffs' counsel persisted in recklessly pursuing claims against those Defendants in the face of their well-supported motion to dismiss filed on September 10, 2002." *Id*. at 15. Based on our decision in *Steinert*, discussed more fully in subsection C above, we see no abuse of discretion in the district court's decision to award fees and costs incurred after September 10, 2002 to the Buffington Defendants.

### III. Conclusion

We AFFIRM the district court's determination as to when Mr. Mulhern vexatiously multiplied the proceedings, but we REVERSE and REMAND the calculation of fees and costs.

On remand, the district court should recalculate fees and costs incurred from February 4, 2003 through December 5, 2003 for the Cortez Defendants, with costs being limited to the items listed in § 1920,[5] and recalculate fees and costs incurred from September 11, 2002 through December 5, 2003 for the Buffington Defendants, with costs being limited to the items listed in § 1920.[6] As for the

---

[5] Based on our preliminary calculations, the new assessment should reflect reductions of $122.00 for fees incurred on February 3, $2,168.00 for fees incurred after December 5, $10.92 for non-reimbursable costs, and $93.46 for costs incurred after December 5.

[6] Based on our preliminary calculations, the new assessment should reflect reductions of $1,020.00 for fees incurred after December 5, $1,136.89 for

(continued...)

-19-

Durango Defendants, the district court will first need to reconsider and expressly rule on Mr. Mulhern's argument made in his objections to the magistrate judge's report and recommendation that the Durango Defendants waived their right to attorneys' fees and costs by failing to submit detailed time sheets in support of their motion for sanctions. *See* Aplt. Supp. App., Vol. II at 849. If that issue is resolved in favor of the Durango Defendants, then they will need to submit detailed time sheets in order for the district court to recalculate the amount of fees and costs incurred from February 4, 2003 through December 5, 2003, with costs being limited to the items listed in § 1920.

Entered for the Court

Stephen H. Anderson
Circuit Judge

---

[6](...continued)
non-reimbursable costs, and $175.02 for costs incurred after December 5.