FILED
**United States Court of Appeals**
**Tenth Circuit**

**April 22, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DALE SNYDER; MARILYN SNYDER;
MARY ANN GELDREICH; MARY
HARROW; KENNETH DALE YODER;
CATHERINE TAYLOR; MARTHA
LEMERT; GARY LEMERT; JEFFREY
RAY; JENNIFER RAY; LOUISE
CREAGER; JANET KOCH; IAN
SIEMPLENSKI; TOMMY MEYER;
NICOLE WRIGHT-MEYER; SUEHAM
KAY HOFFMAN; LAILA SAEDA
URBAN; ESTATE OF DOROTHY
WOOD HAMMER,

     Plaintiffs - Appellants,

v.

ACORD CORPORATION, a Delaware
non-profit corporation; ACUITY, A
MUTUAL INSURANCE COMPANY, a
Wisconsin corporation; ADDISON
INSURANCE COMPANY, an Iowa
corporation; ALL AMERICA
INSURANCE COMPANY, an Ohio
corporation, d/b/a The Central Insurance
Companies; ALLIANZ GLOBAL RISKS
US INSURANCE COMPANY, a
California corporation; ALLIANZ LIFE
INSURANCE CO. OF NORTH
AMERICA, a Minnesota corporation;
ALLIANZ OF AMERICA, INC., a
Delaware corporation; ALLSTATE
INSURANCE COMPANY, an Illinois
corporation; AMERICAN ASSOCIATION
OF INSURANCE SERVICES, INC., a
Delaware non-profit corporation;
AMERICAN AUTOMOBILE
INSURANCE COMPANY, a Missouri

No. 19-1112
(D.C. No. 1:14-CV-01736-JLK)
(D. Colo.)

corporation a/k/a Fireman's Fund Insurance Company of Missouri; AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA, a Florida corporation; AMERICAN FAMILY HOME INSURANCE COMPANY, a Florida corporation; AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation; AMERICAN INDEMNITY FINANCIAL CORPORATION, a Delaware corporation; AMERICAN INTERNATIONAL GROUP, INC., a Delaware corporation; AMERICAN MODERN INSURANCE GROUP, INC., an Ohio corporation; AMERICAN MODERN HOME INSURANCE COMPANY, an Ohio corporation; AMERICAN MODERN SELECT INSURANCE COMPANY, an Ohio corporation; AMERICAN RELIABLE INSURANCE COMPANY, an Arizona corporation; AMERICAN STRATEGIC INSURANCE CORP., a Florida corporation; ASSOCIATED INDEMNITY CORPORATION, a California corporation; AUTOMOBILE INSURANCE COMPANY OF HARTFORD CONNECTICUT, a Connecticut corporation; AUTO-OWNERS INSURANCE COMPANY, a Michigan corporation d/b/a Auto-Owners Insurance; CASUALTY ACTUARIAL SOCIETY, an Illinois not for profit corporation; CENTRAL MUTUAL INSURANCE COMPANY, an Ohio corporation d/b/a The Central Insurance Companies; THE CHUBB CORPORATION, a New Jersey corporation; CHUBB NATIONAL INSURANCE COMPANY, an Indiana corporation; CHUBB SERVICES CORPORATION, an Illinois corporation; CINCINNATI INSURANCE COMPANY,

2

an Ohio corporation; COLORADO FARM BUREAU MUTUAL INSURANCE CO., a Colorado corporation; COUNTRY MUTUAL INSURANCE COMPANY, an Illinois corporation; ELECTRIC INSURANCE COMPANY, a Massachusetts corporation; EMPLOYERS MUTUAL CASUALTY COMPANY, an Iowa corporation d/b/a EMC Insurance Companies; ENCOMPASS INDEMNITY COMPANY, an Illinois corporation; ENCOMPASS INSURANCE COMPANY OF AMERICA, an Illinois corporation d/b/a Encompass Insurance; FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, a Kansas corporation; FARMERS INSURANCE EXCHANGE, an Iowa corporation a/k/a Farmers Casualty Insurance Company d/b/a Farmers Insurance Exchange; FEDERAL INSURANCE COMPANY, an Indiana corporation; FIDELITY AND DEPOSIT COMPANY OF MARYLAND, a Maryland corporation; FIREMAN'S FUND INSURANCE COMPANY, a California corporation; FIRST AMERICAN PROPERTY & CASUALTY INSURANCE COMPANY, a California corporation d/b/a First American Property & Casualty Group; FIRST AMERICAN FINANCIAL CORPORATION, a Delaware corporation; GRANGE INSURANCE ASSOCIATION, a Washington corporation d/b/a Grange Insurance Group; GREAT NORTHERN INSURANCE COMPANY, an Indiana corporation; GUIDEONE MUTUAL INSURANCE COMPANY, an Iowa corporation d/b/a Guideone Insurance; HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Connecticut corporation; HARTFORD FIRE INSURANCE COMPANY, a Connecticut

3

corporation; INSURANCE SERVICES OFFICE, INC., a Delaware corporation; INTERNATIONAL INSURANCE SOCIETY, INC., a Delaware non-profit corporation; KEMPER CORPORATE SERVICES, INC., an Illinois corporation; KEMPER CORPORATION, a Delaware corporation; LAFAYETTE INSURANCE COMPANY, a Louisiana corporation a/k/a United Life Insurance Company, Inc.; LIBERTY INSURANCE CORPORATION, an Illinois corporation; LIBERTY MUTUAL INSURANCE, a Massachusetts corporation; LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation; LM INSURANCE CORPORATION, an Illinois corporation; MARKEL AMERICAN INSURANCE COMPANY, a Virginia corporation; MARKEL INSURANCE COMPANY, an Illinois corporation; MCKINSEY & COMPANY, INC., a Delaware corporation a/k/a McKinsey & Company, Inc. Washington D.C.; MCKINSEY & COMPANY, INC., a New York corporation; METLIFE AUTO & HOME INSURANCE AGENCY, INC., a Rhode Island corporation; METROPOLITAN DIRECT PROPERTY & CASUALTY INSURANCE COMPANY, a Rhode Island corporation; METROPOLITAN LIFE INSURANCE COMPANY, a Rhode Island corporation; METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, a Rhode Island corporation; MILBANK INSURANCE COMPANY, an Iowa corporation; MUNICH-AMERICAN HOLDING CORPORATION, a Delaware corporation; NATIONAL CASUALTY COMPANY, a Wisconsin corporation; NATIONAL FARMERS UNION PROPERTY & CASUALTY COMPANY,

4

a Wisconsin corporation; NATIONAL SURETY CORPORATION, an Illinois corporation; NATIONWIDE AFFINITY INSURANCE COMPANY OF AMERICA, an Ohio corporation; NATIONWIDE INSURANCE COMPANY OF AMERICA, a Wisconsin corporation; NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio corporation d/b/a Nationwide Insurance; OWNERS INSURANCE COMPANY, an Ohio corporation d/b/a Auto-Owners Insurance d/b/a Home-Owners Insurance; PACIFIC INDEMNITY COMPANY, a Wisconsin corporation; PHARMACISTS MUTUAL INSURANCE COMPANY, an Iowa corporation; PRAETORIAN INSURANCE COMPANY, a Pennsylvania corporation; PROPERTY CASUALTY INSURERS ASSOCIATION OF AMERICA, a Colorado non-profit corporation; QBE HOLDINGS, INC., a Delaware corporation; QBE INSURANCE COMPANY, a Pennsylvania corporation a/k/a QBE Insurance Corporation; QBE INSURANCE GROUP, LIMITED, a Sydney, Australia corporation; SAFECO INSURANCE COMPANY OF AMERICA, a New Hampshire corporation; SECURA INSURANCE HOLDINGS, INC., a Wisconsin corporation; SENTRY INSURANCE, A MUTUAL COMPANY, a Wisconsin corporation; SHELTER MUTUAL INSURANCE COMPANY, a Missouri corporation; STANDARD FIRE INSURANCE COMPANY, a Connecticut corporation; STATE AUTOMOBILE INSURANCE COMPANY, a Ohio corporation; STATE FARM FIRE AND CASUALTY COMPANY, an Illinois corporation; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois corporation;

5

STILLWATER PROPERTY AND CASUALTY INSURANCE COMPANY, a New York corporation a/k/a Fidelity National Property and Casualty Insurance Company d/b/a Stillwater Insurance Group; TEXAS GENERAL INDEMNITY COMPANY, a Colorado corporation; THE BUCKEYE STATE MUTUAL INSURANCE COMPANY, an Ohio corporation d/b/a Buckeye Insurance Group; THE CALIFORNIA CASUALTY INDEMNITY EXCHANGE, a California corporation; THE HARTFORD FINANCIAL SERVICES GROUP, a Delaware corporation; THE TRAVELERS COMPANIES INC., a Minnesota corporation; THE TRAVELERS INSURANCE COMPANY, a Connecticut corporation; TRAVELERS INSURANCE GROUP HOLDINGS, INC., a Connecticut corporation; TRAVELERS HOME AND MARINE INSURANCE COMPANY, a Connecticut corporation; TRAVELERS INDEMNITY COMPANY OF AMERICA, a Connecticut corporation; TRAVELERS COMMERCIAL INSURANCE COMPANY, a Connecticut corporation; UNITED FIRE GROUP, INC., an Iowa corporation d/b/a United Fire Group; UNITED FIRE & CASUALTY COMPANY, an Iowa corporation d/b/a United Fire Group; UNITED FIRE INSURANCE COMPANY, an Illinois corporation d/b/a United Fire Group; UNITED FIRE AND INDEMNITY COMPANY, a Texas corporation; UNITED FIRE LLOYDS, a Texas corporation; UNITED LIFE INSURANCE COMPANY, an Iowa corporation; UNITED SERVICES AUTOMOBILE ASSOCIATION, a Texas corporation; UNITRIN AUTO AND HOME INSURANCE COMPANY, a New

6

York corporation; UNITRIN DIRECT
PROPERTY & CASUALTY COMPANY,
an Illinois corporation; USAA
CASUALTY INSURANCE COMPANY, a
Texas corporation; VERISK
ANALYTICS, INC., a Delaware
corporation; VIGILANT INSURANCE
COMPANY, a New York corporation;
ZURICH AMERICAN INSURANCE
COMPANY, a New York corporation;
ZURICH INSURANCE GROUP LTD/FI,
a Switzerland corporation,

      Defendants - Appellees.

------------------------------

JOSUE DAVID HERNANDEZ,

      Attorney - Appellant.

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **KELLY**, Circuit Judges.
_____

Seventeen Colorado homeowners ("Plaintiffs") brought an action raising

federal- and state-law claims against insurance companies, trade associations, and

consulting firms ("Defendants"). The district court dismissed the complaint, and we

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

affirmed. *Snyder v. Acord Corp.*, 684 F. App'x 710 (10th Cir. 2017). Plaintiffs and their counsel, Josue Hernandez (collectively, "Appellants"), appeal several orders related to attorneys' fees. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## BACKGROUND

In 2014, Plaintiffs filed an action against 113 defendants alleging "a massive conspiracy to underinsure and underpay homeowners' claims" and purporting to raise twenty-three claims, including conspiracy and antitrust claims, in a "260-page, 1,363 paragraph, third amended complaint." *Snyder*, 684 F. App'x at 716-17. The district court dismissed the complaint under Federal Rules of Civil Procedure 8 and 12(b)(6) and denied Plaintiffs' motion for relief from the judgment. We affirmed. *See id.* at 717. By separate order, we awarded Defendants appellate attorneys' fees under Colo. Rev. Stat. § 13-17-201 and remanded for a calculation of the amount. In an additional order, we admonished Mr. Hernandez for violating briefing rules and proceeding in a manner "inconsistent with the standards of practice required" in this court, and we warned that future violations will result in "further discipline up to and including disbarment from the bar of this court." Aplts. App. Vol. 21 at 3956-57. We denied Plaintiffs' petition for rehearing and rehearing en banc. The Supreme Court denied their petitions for a writ of certiorari and rehearing.

In May 2016, Defendants filed a motion for attorneys' fees under 28 U.S.C. § 1927 and Colo. Rev. Stat. § 13-17-201. The district court granted the motion and deferred deciding the amount of the fees until after Plaintiffs' appeal was resolved.

8

After we denied Plaintiffs' petition for rehearing and rehearing en banc, Plaintiffs filed a motion to dismiss the claim for attorneys' fees under Rule 12(b)(6), along with a motion seeking, *inter alia*, an order compelling discovery. The court struck these motions as unauthorized under its scheduling order and procedurally improper under the Rules of Civil Procedure. The court also noted the motions contravened its prior warning against "any more prolix, redundant, meandering pleadings or briefs." Aplts. App. Vol. 21 at 4066 (internal quotation marks omitted). After Defendants filed their brief on the amount of the fees, Plaintiffs filed a "Motion to Schedule Adversarial Submissions, Pursuant to Fed.R.Civ.P. 54(d)(2)(C), and to Address Evident Double Billing and Witnesses['] Credibility Issues," Aplts. App. Vol. 32 at 6108-270. The court denied the motion, noting Plaintiffs could address the amount of the fees in their brief. Following the completion of the briefing, which included a surreply that the court allowed Plaintiffs to file, the court held a hearing.

In January 2019, the district court entered a detailed 22-page opinion and order that: (1) awarded approximately $1.6 million in attorneys' fees under Colo. Rev. Stat. § 13-17-201, including appellate fees per our order, to a subset of the defendants; (2) determined that Mr. Hernandez was personally liable under 28 U.S.C. § 1927 for fees incurred related to district court proceedings because of his conduct during the litigation; and (3) directed Defendants to submit the amount of attorneys' fees they intended to seek against Mr. Hernandez under § 1927. The court ultimately entered an order stating Defendants were entitled to recover approximately $1 million of the $1.6 million total from either Mr. Hernandez or Plaintiffs under § 1927.

Appellants filed a post-judgment motion pursuant to Rules 52 and 59 of the Federal Rules of Civil Procedure, raising various challenges to the attorneys' fees orders. The court denied the motion as procedurally inadequate and without merit.

Appellants then filed a motion under Rule 60(b)(6), seeking vacatur of all prior rulings and recusal of the district judge from further proceedings. The motion alleged the judge: (1) failed to disclose the scope of representation provided to him by a partner at the firm of two attorneys that represented one defendant; (2) was biased in favor of Defendants because of that attorney-client relationship; and (3) was biased against Appellants. Appellants' motion attacked the judge's character based on rumor, innuendo, speculation, and hearsay. Two defendants moved to seal the Rule 60(b)(6) motion, asserting it "serve[d] no legitimate purpose," contained "baseless, irrelevant, and potentially libelous allegations," and was an attempt to create a "circus atmosphere that can only needlessly cloud the integrity of these proceedings." Aplts. App. Vol. 42 at 7984, 7986. In their objection, Appellants reiterated many allegations in their Rule 60(b)(6) motion. The district court denied the Rule 60(b)(6) motion, and a magistrate judge, upon referral, granted the motion to seal. This appeal followed.

## DISCUSSION

Appellants raise a host of challenges to the district court's orders awarding attorneys' fees and denying the motions for post-judgment relief. We reject them all.

**I.     Attorneys' Fees Under Colo. Rev. Stat. § 13-17-201**

Appellants first contend the court erred in its attorneys' fee order under Colo. Rev. Stat. § 13-17-201. This statute mandates an award of reasonable attorneys' fees to

10

a defendant in a tort action dismissed under Rule 12(b) of the Colorado Rules of Civil Procedure. *See* Colo. Rev. Stat. § 13-17-201. The statute also applies when a federal court, exercising diversity jurisdiction, dismisses Colorado state tort claims under Rule 12(b) of the Federal Rules of Civil Procedure. *See Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000). The statute, which was enacted "to discourage unnecessary litigation of tort claims," *State v. Golden's Concrete Co.*, 962 P.2d 919, 925 (Colo. 1998), applies to an action that is "primarily a tort action," *U.S. Fax Law Ctr., Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 517-18 (Colo. App. 2009). We review factual findings for abuse of discretion and legal conclusions de novo. *See Jones*, 203 F.3d at 756.

## A. Preemption

Appellants argue that Colo. Rev. Stat. § 13-17-201 is preempted in RICO and antitrust cases and that the court erred in awarding fees under this statute. We disagree.

Preemption of state law occurs (1) "when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law"; (2) "when there is outright or actual conflict between federal and state law"; (3) "where compliance with both federal and state law is in effect physically impossible"; (4) "where there is implicit in federal law a barrier to state regulation"; (5) "where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law"; or (6) "where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress." *La. Pub. Serv. Comm'n v. Fed. Commc'ns Comm'n*, 476 U.S. 355, 368-69 (1986).

11

In addition to their eighteen state-law claims, Appellants raised four conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and one antitrust claim under the Clayton Act. Neither the attorneys' fee provision for RICO, 18 U.S.C. § 1964(c), nor the fee provision for the Clayton Act, 15 U.S.C. § 15(a), expressly preempts state law. There also is no conflict in the statutory language because Colo. Rev. Stat. § 13-17-201 requires fees only for prevailing defendants, whereas the two federal statutes address fees only for prevailing plaintiffs and do not expressly permit or prohibit fees for defendants.

Even so, Appellants contend the state statute conflicts with "the policy behind the federal antitrust and RICO fee-shifting statutes" and Supreme Court cases restricting fee awards for defendants. Aplts. Opening Br. at 35. They analogize RICO and antitrust actions to 42 U.S.C. § 1983 actions, in which the relevant statute permits a court to award "the prevailing party" its attorneys' fees and prescribes no separate standard for prevailing defendants, *see* 42 U.S.C. § 1988(b). However, the Supreme Court has interpreted that statute, based on legislative history, to allow a prevailing defendant to recover fees only if the action "was vexatious, frivolous, or was brought to harass or embarrass the defendant." *Hensley v. Eckerhart*, 461 U.S. 424, 429 & n.2 (1983); *see also Hughes v. Rowe*, 449 U.S. 5, 14 (1980) (allowing fees only when the § 1983 action was "groundless or without foundation"); *cf. Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 420-21 (1978) (similarly interpreting Title VII's "prevailing party" fee provision, 42 U.S.C. § 2000e-5(k),

12

based on legislative history).[1]  And because of this heightened standard, the Colorado Supreme Court has held Colo. Rev. Stat. § 13-17-201 conflicts with 42 U.S.C. § 1988 and is preempted in § 1983 actions.  *See Golden's Concrete*, 962 P.2d at 926.

Appellants contend that the same heightened standard for defendants in § 1983 cases should apply in RICO and antitrust cases and that Colo. Rev. Stat. § 13-17-201, therefore, should be deemed preempted based on *Golden's Concrete*.  But whereas the Court relied on legislative history for § 1983 cases in *Hensley* and *Hughes* and for Title VII cases in *Christianburg*, Appellants identify no legislative history supporting a heightened standard for awarding fees to defendants in RICO and antitrust cases. They quote *Hensley* as stating "42 U.S.C. § 1983 fees are governed by 'the same standards which prevail in . . . *antitrust cases*.'"  Aplts. Opening Br. at 34 (quoting *Hensley*, 461 U.S. at 430 n.4).  But the full quote shows clear the Court was referring to "the *amount* of fees," not when they may be awarded.  *Hensley*, 461 U.S. at 430 n.4 (emphasis added) (internal quotation marks omitted).[2]

---

[1] Contrary to Appellants' assertion, Title VII's fee provision is not "identical to the RICO and antitrust" fee statutes and does not include "language that 'allows fee awards only to *prevailing* private plaintiffs,'" Aplts. Reply Br. at 8 n.9 (internal quotation marks omitted).  Rather, just like § 1988, the plain language allows fees for "'the prevailing party,'" *Christianburg*, 434 U.S. at 414 (quoting 42 U.S.C. § 2000e-5(k)), which the Court interpreted as applying only to prevailing plaintiffs, *id.* at 422.

[2] Appellants also confusingly claim *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 401-03 (1968) (per curiam), and *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 493 (1985), are "governing precedent."  Aplts. Opening Br. at 34 & n.9. But those cases address neither preemption nor legislative intent relative to attorneys' fees.  The cited portion of *Sedima* merely noted Congress intended to encourage civil RICO actions "to fill prosecutorial gaps," *Sedima*, 473 U.S. at 493.  And contrary to

Finally, "[c]ourts . . . have never construed [RICO's attorneys' fee] provision as precluding a prevailing defendant from recovering attorneys' fees when authorized elsewhere." *Chang v. Chen*, 95 F.3d 27, 28 (9th Cir. 1996) (collecting cases). And in an analogous context, where a federal statute allows fees for prevailing plaintiffs but does not mention defendants, the Eleventh Circuit held that the "statutory silence" does not act "as an implicit prohibition against awarding attorneys' fees to [defendants]" when "authorized elsewhere" and that, therefore, a state statute authorizing fees was not preempted. *Smith v. Psychiatric Sols., Inc.*, 750 F.3d 1253, 1257 (11th Cir. 2014) (discussing 18 U.S.C. § 1514A(c)).

Ultimately, Appellants have not provided sufficient authority to overcome the "presumption against implied conflict preemption," which is grounded on "respect for the States as independent sovereigns in our federal system," *Tarrant Reg'l Water Dist. v. Herrmann*, 656 F.3d 1222, 1242 (10th Cir. 2011) (internal quotation marks omitted), *aff'd*, 569 U.S. 614 (2013). But we need not conclusively decide whether Colo. Rev. Stat. § 13-17-201 can ever be preempted in actions raising RICO and antitrust claims. Instead, we hold that, based on the circumstances in this case, the fee award to Defendants under Colo. Rev. Stat. § 13-17-201 was not preempted by the fee provisions in RICO or the Clayton Act, particularly considering eighteen of the twenty-three claims for relief were based solely on state law. *Cf. Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1238 (10th Cir. 1999) (stating even if "there is some federal

Appellants' description, *Newman* was not an antitrust case but, instead, addressed fees under Title II of the Civil Rights Act of 1964, *see Newman*, 390 U.S. at 401.

14

policy prohibiting defendants from recovering fees under the ADEA, there is nothing to indicate that *federal* policy should alter the common law rule regarding attorneys' fees for pendent *state* law claims").[3]  Appellants, therefore, have failed to show error.

## B. Lodestar

Appellants next contend the district court erred in calculating the amount of the fees under Colo. Rev. Stat. § 13-17-201.  This argument is conclusory and without merit.

"A court will generally determine what fee is reasonable by first calculating the lodestar—the total number of hours reasonably expended multiplied by a reasonable hourly rate—and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome." *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012) (internal quotation marks omitted).  Appellants contend the court failed to ensure Defendants subtracted duplicate hours.  But they do not elaborate or describe how exactly Defendants' hours were duplicative or otherwise excessive.  And they provide no citation to any portion of the 44-volume, 8,410-page Appendix to support

---

[3] Even assuming the fee provisions in RICO and the Clayton Act preempt Colo. Rev. Stat. § 13-17-201, that would not be a basis to preclude fees altogether under the state statute, as Appellants appear to contend.  Eliminating fees under the state statute only on the basis that five out of twenty-three claims are preempted would be tantamount to throwing out the baby with the bath water and would encourage litigants to include a single federal claim with a preemptive fee-shifting provision, no matter how meritless, solely to evade the reach of Colo. Rev. Stat. § 13-17-201.  Preemption of § 13-17-201, however, is claim-specific.  *See Golden's Concrete*, 962 P.2d at 926 (repeatedly stating the § 1983 *claim* was preempted).  At most, fees would need to be apportioned, with Defendants receiving fees under § 13-17-201 for defending against the state-law claims. *Cf. Bennett*, 189 F.3d at 1238.  But Appellants have attacked the award in its entirety and have not sought apportionment, and we decline to make the argument for them, *see Tippetts v. United States*, 308 F.3d 1091, 1093 n.2 (10th Cir. 2002).

their assertion that the district court's error is evident from a "review of the documentary evidence," Aplts. Opening Br. at 48. "It is not our role to sift through the record to find evidence not cited by the parties to support arguments they have not made." *Cordova v. Aragon*, 569 F.3d 1183, 1191 (10th Cir. 2009); *see also* Fed. R. App. P. 28(a)(8)(A).

Regardless, the court properly explained that "[m]oving parties are instructed to make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" and found that Defendants had "done just that." Aplts. App. Vol. 41 at 7941-42 (internal quotation marks omitted) (citing reductions by defense counsel and their expert witness). The court considered Appellants' "repeated accusations" yet found "no evidence of double billing." *Id.* at 7942 n.9.

Ultimately, the district court properly applied the lodestar analysis. Appellants have not demonstrated the court abused its discretion or otherwise erred.

## C. Appellate Attorneys' Fees

Appellants also contend that this court's order awarding appellate attorneys' fees and remanding for a determination of their amount was a non-final order and that the members of the panel that issued that order are barred from reviewing the final determination on appeal.

Appellants rely on 28 U.S.C. § 47, which provides that "[n]o judge shall hear or determine an appeal from the decision of a case or issue tried by him." But as evident from the title of that statute, "Disqualification of *trial* judge to hear appeal" (emphasis added), Appellants' reliance on this statute is misplaced. Appellants have cited no authority for applying 28 U.S.C. § 47 to the present circumstances, and we know of none.

16

They have presented no viable argument regarding the amount of the fees. And to the extent they contest our underlying order awarding fees, we declined to reconsider that order, and the Supreme Court denied review. Appellants' argument is without merit.

## II. Attorneys' Fees Under 28 U.S.C. § 1927

Appellants also challenge the fee award under 28 U.S.C. § 1927. That statute provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. We review an award under § 1927 for abuse of discretion and any underlying legal analysis de novo. *Steinert v. Winn Grp., Inc.*, 440 F.3d 1214, 1221 (10th Cir. 2006).

### A. Joint and Several Liability

Appellants contend the district court erroneously imposed § 1927 fees against Plaintiffs. Based upon Mr. Hernandez's "unreasonable and vexatious multiplication of the proceedings," the district court awarded Defendants their attorneys' fees against Mr. Hernandez, as outlined in a table included in the order, and ordered that Defendants "are entitled to recover that portion of their total fee award from him *or Plaintiffs*." Aplts. App. Vol. 41 at 7966 (emphasis added). Appellants contend such joint and several liability was impermissible under § 1927 and that only Mr. Hernandez may be liable for those fees totaling approximately $1 million, thus reducing Plaintiffs' liability for fees awarded under Colo. Rev. Stat. § 13-17-201 to approximately $600,000. We disagree.

Appellants correctly note "§ 1927 is available against only attorneys." *Steinert*, 440 F.3d at 1222. But they do not take into account the significant overlap between the

17

fee award under Colo. Rev. Stat. § 13-17-201 and the fee award under § 1927. Contrary to Appellants' contention, the § 1927 fees were not imposed against Plaintiffs; those fees already had been imposed against them under Colo. Rev. Stat. § 13-17-201 and were not being imposed against them a second time. Rather, the § 1927 order was against Mr. Hernandez and merely provided that a portion of fees that had been ordered recoverable from the seventeen Plaintiffs under Colo. Rev. Stat. § 13-17-201 could *also* be recovered from Mr. Hernandez personally. Thus, the effect of the order was: (1) to remove some of the burden for the fees from falling solely on Plaintiffs; and (2) to afford Defendants an additional and alternative means of recovering approximately $1 million of the $1.6 million in fees. This is consistent with the "victim-centered approach" we have used in interpreting § 1927. *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205 (10th Cir. 2008). And other courts have upheld awards structured in this very fashion.[4]

Under these circumstances, the district court did not err in making Plaintiffs and Mr. Hernandez jointly and severally liable for the approximately $1 million in fees identified in the § 1927 order.

---

[4] *See, e.g.*, *Wilson-Simmons v. Lake Cty. Sheriff's Dep't*, 207 F.3d 818, 825 (6th Cir. 2000) (affirming judgment "awarding attorney fees against [the plaintiff] pursuant to § 1988 and imposing joint and several liability for that award upon her counsel as a sanction pursuant to § 1927"); *Lewis v. Brown & Root, Inc.*, 711 F.2d 1287, 1289, 1292 (5th Cir. 1983) (upholding award of fees under § 1927 against plaintiff and his counsel jointly and severally), *cited in Morris v. Adams-Millis Corp.*, 758 F.2d 1352, 1357 n.7 (10th Cir. 1985).

18

**B. Colorability and Causal Connection**

Appellants next contend the district court erred in its order under § 1927 by failing to assess the colorability of Mr. Hernandez's actions, but they have not established that such an assessment is even required. Colorability or merit may be a defense to a § 1927 sanction premised on pursuing a meritless claim. *See Baca v. Berry*, 806 F.3d 1262, 1273-77 (10th Cir. 2015). But "a court's discretion to award fees is broad if it concludes an attorney *acted in an objectively unreasonable way* that multiplied proceedings." *Id.* at 1268 (emphasis added).

Appellants' contention is further flawed because it rests on the incorrect premise that § 1927 has an "objective bad faith standard" whereby an attorney can be sanctioned only for actions that lacked any "legal and factual bases" and were "completely without merit." Aplts. Opening Br. at 40 (internal quotation marks omitted). To the contrary, we have expressly held that "§ 1927 does not require a finding of bad faith." *Hamilton*, 519 F.3d at 1202. Although "subjective good faith on the part of a non-attorney party appellant may in some instances excuse otherwise unreasonable conduct," "we are entitled to demand that an attorney exhibit some judgment." *Id.* (internal quotation marks omitted). We will not excuse "one who acts with an empty head and a pure heart." *Id.* (internal quotation marks omitted). "[A]ny conduct that, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court, is sanctionable." *Id.* (internal quotation marks omitted); *see also Steinert*, 440 F.3d at 1221 (holding sanctions under § 1927 may be awarded "when the entire course of the proceedings was unwarranted" or "when an attorney acts recklessly or with indifference

19

to the law," "is cavalier or bent on misleading the court," or "intentionally acts without a plausible basis" (internal quotation marks omitted)).

Here, the district court imposed § 1927 liability based on Mr. Hernandez's histrionics and outrageous conduct, not for pursuing meritless claims. The court noted that he "refus[ed] to acknowledge that the complaint was deficient under Federal Rule of Civil Procedure 8" and that he filed "legally incorrect briefs," which nearly prompted the court to sanction him. Aplts. App. Vol. 41 at 7950-51 & n.15. The court described Mr. Hernandez's filings as "prolix, meandering, full of unfounded supposition and speculation, repetitive and convoluted almost to the point of being maddening" and stated that his "notices and errata alone have required Defendants to turn circles and backflips." *Id.* at 7953. The court also detailed his "relentless submission of inappropriate filings," *id.* at 7952, noting: (1) the complaint was amended multiple times, with the last version being "260 pages and 1,363 paragraphs" and "filed just nine days before Defendants' motions to dismiss were due," *id.*; (2) a 40-page motion for extension of time—"the lengthiest one [the judge] had ever seen or heard of"—followed by an even longer reply in support of the motion, *id.*; and (3) a "motion for relief from the final judgment, which—with its exhibits and errata—totaled approximately 1,100 pages," *id.* at 7952-53. Finally, the court noted that in a companion case that was later removed to federal court and consolidated with the present case, a Colorado state court struck the complaint Mr. Hernandez filed for "violating the intent of the Colorado Rules of Civil Procedure in the extreme" and for being so long as to "unnecessarily increase costs and generate

20

animosity." *Id.* at 7951-52 (brackets and internal quotation marks omitted). And despite having that complaint stricken, he filed a complaint four times as long in federal court.

The district court concluded that Mr. Hernandez "without a doubt multiplied these proceedings unreasonably and vexatiously," *id.* at 7950, and that "[t]he vexatiousness of the submissions generally was not in what they purported to be" but "was in their substance and form," *id.* at 7953. The court further found Mr. Hernandez "evidenced a serious and standard disregard for the orderly process of justice" throughout the case. *Id.* The court acknowledged "the impact" the fee awards would "have both on Plaintiffs and Mr. Hernandez," but refused to disregard Mr. Hernandez's "obstinate pattern of behavior" and Appellants' "disregard for the consequences of that behavior." *Id.* at 7954. Finally, the court found Mr. Hernandez "forced Defendants . . . to expend enormous sums defending this action due to the[] senseless and ineffective pleadings and filings." *Id.*

The district court thoroughly explained the basis for the sanctions and properly applied our standards under § 1927. Appellants have failed to establish error.

### III. Post-Judgment Motions

### A. Rules 52 and 59

We turn next to the district court's denial of Appellants' motion under Rules 52 and 59 of the Federal Rules of Civil Procedure, in which they contested the attorneys' fees orders.[5] The court denied the motion as "procedurally inadequate and substantively without merit." Aplts. App. Vol. 41 at 7983. We review the denial of a Rule 59 motion

---

[5] The motion also claimed the fee orders were substantively erroneous, raising many of the arguments that Appellants have raised on appeal and that we have rejected.

for abuse of discretion. *Price v. Wolford*, 608 F.3d 698, 706 (10th Cir. 2010). Under

Rule 52(a)(1), we review factual findings for clear error and legal conclusions de novo.

*United States v. Estate of St. Clair*, 819 F.3d 1254, 1264 (10th Cir. 2016).

Citing Rule 52(a)(1), Appellants argue the court erred in denying their claim that

the attorneys' fees orders were conclusory and failed to specifically address all material

issues of fact and law. But their brief fails to specifically identify what was missing in

the court's orders. And the orders provide us with "a clear understanding of the factual

basis for the trial court's decision." *Bell v. AT&T*, 946 F.2d 1507, 1510 (10th Cir. 1991)

(internal quotation marks omitted). Accordingly, we hold that the orders did not violate

Rule 52(a) and that the court did not err in denying the Rule 59 motion.[6]

## B. Rule 60(b)(6)

### A. Order Granting Motion to Seal

We first consider Appellants' arguments regarding the sealing of their Rule

60(b)(6) motion.[7] We review the magistrate judge's order for abuse of discretion.

*United States v. Bacon*, 950 F.3d 1286, 1291 (10th Cir. 2020) (internal quotation

marks omitted). When deciding whether to restrict public access to judicial records,

---

[6] Because Appellants have failed to show the court erred in denying the motion as "substantively without merit," Aplts. App. Vol. 41 at 7983, we need not address their challenge to the alternative basis that the motion was "procedurally improper," *id. See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004).

[7] The magistrate judge also sealed Appellants' response and objection to the motion to seal. But Appellants have not contended the magistrate judge erred in restricting access to that document. Therefore, any issue regarding that document is waived. *See Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019).

a court must assess the circumstances of the case and consider the parties' interests along with the public's interest to open access. *See id.* at 1293-94. There is a "strong presumption of openness," but that "can be overcome where countervailing interests heavily outweigh the public interests in access." *Id.* at 1293 (internal quotation marks omitted). Countervailing interests include ensuring court records are not used for "improper purposes," such as "to gratify private spite," "promote public scandal," or "serve as reservoirs of libelous statements for press consumption." *United States v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985) (internal quotation marks omitted).

The magistrate judge thoroughly addressed the circumstances of the case and noted that "three weeks after a substantial judgment was entered against him in the form of the attorneys' fees award," Mr. Hernandez, with a "self-evident" motivation, "filed the Challenged Motion containing what can only be described as scurrilous accusations with a total lack of foundation." Aplts. App. Vol. 42 at 8007. The magistrate judge described the Rule 60(b)(6) motion as: (1) "appear[ing] to be spiteful, scandalous and motivated by the findings of several courts against Mr. Hernandez," *id.* at 8008; (2) containing "unfounded information, presented to besmirch reputation rather than to address any legitimate purpose," *id.* at 8008-09; (3) "warranting restricted access," *id.* at 8008; and (4) posing, if publicly disclosed, a "clearly defined and serious injury to individuals to whom the accusations are directed," *id.* at 8009. Refusing to allow the Rule 60(b)(6) motion to "become a vehicle for improper purposes," *id.* at 8008 (internal quotation marks omitted), the

23

magistrate judge granted the motion to seal and placed the Rule 60(b)(6) motion under Level 1 restricted access, *see* D.C.COLO.LCivR 7.2(b).

Appellants contend the motion to seal did not identify, and the magistrate judge did not consider, less restrictive alternatives to sealing, such as redaction. However, the magistrate judge properly recognized "a denial of public access to the record must be narrowly tailored to serve the interest being protected by sealing or restricting access to the records." Aplts. App. Vol. 42 at 8008. And she placed the Rule 60(b)(6) motion under the lowest restriction. *See* D.C.COLO.LCivR 7.2(b) (providing "three levels of restriction," where Level 1 restricts access to the parties and the court, Level 2 to the filing party and the court, and Level 3 to just the court). We also agree with Defendants that the inappropriate accusations against the judge were so pervasive as to render redaction or other alternatives impracticable. The magistrate judge's ruling was sufficiently narrowly tailored.

Appellants also contend the motion to seal failed to identify "a *clearly defined* and serious injury to *the party seeking closure*." Aplts. Opening Br. at 53 (internal quotation marks omitted). We have reviewed the Rule 60(b)(6) motion and agree with the magistrate judge's description of its contents, the apparent motivation for its filing, and the potential harm it could cause. Under the circumstances of this case, the motion to seal sufficiently identified potential injury to the integrity of the proceedings. *Cf. United States v. McVeigh*, 119 F.3d 806, 813 (10th Cir. 1997) (upholding order sealing inadmissible evidence and stating "exposing the public generally" to "such evidence would play a negative role in the functioning of the

24

criminal process"). Impugning the proceedings also would tend to impugn the court's orders, including those awarding attorneys' fees.[8] And we reject Appellants' suggestion that the identified harm must be to the party filing the motion to seal.

Finally, Appellants contend the magistrate judge failed to properly balance the competing interests in granting the motion to seal. But we agree with the magistrate judge that Appellants had no legitimate purpose in filing the Rule 60(b)(6) motion, so we perceive no legitimate interest in its disclosure either. Also, the public interest in disclosure was minimal, whereas the movants—indeed, all of the defendants—had a legitimate interest in protecting the integrity of the proceedings and not allowing Appellants to pollute the litigation with unsupported accusations about the judge.

The magistrate judge did not abuse her discretion or otherwise err in placing the Rule 60(b)(6) motion under Level 1 restricted access.[9]

## B. Order Denying Rule 60(b)(6) Motion

As for the denial of the Rule 60(b)(6) motion, we review that order for an abuse of discretion and will "reverse[] only if we find a complete absence of a

---

[8] The two defendants filing the motion to seal were awarded nearly $200,000 combined in fees, with over $100,000 recoverable against Mr. Hernandez.

[9] Appellants also have filed a motion to unseal Volume 43 of the Appendix, which contains the materials placed under restricted access. In reviewing this motion, "we are not bound by the district court's decision to seal certain documents below." *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 905 (10th Cir. 2017) (internal quotation marks omitted). But Appellants' motion is procedurally improper as well as without merit, for the very reasons recognized by the magistrate judge. We see no legitimate reason to unseal these materials, and we deny Appellants' motion.

reasonable basis and are certain that the decision is wrong." *Johnson v. Spencer*, 950 F.3d 680, 701 (10th Cir. 2020) (internal quotation marks omitted). Within this framework, "we review subsidiary legal questions de novo." *Id.*

In their motion, Appellants sought relief from the district judge's prior rulings, as well as his recusal from further proceedings, based on 28 U.S.C. § 455.[10] Section 455(a) requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b), on the other hand, lists various grounds for disqualification, including "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding," *id.* § 455(b)(1). Subsection (a), thus, addresses "the appearance of impartiality," and subsection (b)(1) addresses "actual partiality." *Burke v. Regalado*, 935 F.3d 960, 1053 (10th Cir. 2019). Section 455(e) provides that grounds under subsection (b) cannot be waived and that grounds under subsection (a) can be waived "provided [waiver] is preceded by a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455(e). Recusal should be granted when "a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995) (per curiam) (internal quotation marks omitted). We review the denial of a recusal motion for abuse of discretion. *Hinman v. Rogers*, 831 F.2d 937, 938 (10th Cir. 1987) (per curiam).

---

[10] Appellants also based their motion on 28 U.S.C. § 144, which concerns "personal bias or prejudice either against [the moving party] or in favor of any adverse party." They have not addressed § 144 on appeal, so we confine our review to § 455. *See Burke v. Regalado*, 935 F.3d 960, 1049 n.79 (10th Cir. 2019).

26

Approximately two months before issuing his decision dismissing the complaint, the district judge disclosed to the parties that: (1) he was "being represented in a private, non-litigation matter by Hal Haddon of Haddon, Morgan & Foreman, P.C., who is the senior partner of counsel representing a party in this case"; (2) the matter had "nothing whatever to do with this case" and he had not "had any communication about the case with Mr. Haddon"; and (3) he saw "no basis for [his] recusal in this case" but nonetheless provided the disclosure pursuant to § 455. Aplts. App. Vol. 14 at 2584. Based on this disclosure, the parties filed waivers under § 455(e). Appellants contend that the judge's disclosure was incomplete because he had previously been represented by Mr. Haddon and that their waiver, therefore, was invalid. We do not believe the disclosure was improper.[11] And we need not address the validity of Appellants' waiver or the denial of their request for an evidentiary hearing because there was no genuine basis for recusal.

Appellants contend the judge should have recused himself because he: (1) was presently being represented in a non-litigation matter by Mr. Haddon; (2) had been represented by Mr. Haddon in a past state court matter and had not disclosed this to the parties; and (3) may have been represented by Mr. Haddon in other matters based on (a) hearsay from unidentified individuals, (b) a newspaper article from 1980 reporting statements allegedly made by the judge, and (c) the nature of other cases in which Mr.

---

[11] Appellants contend they learned after fees were awarded that the judge had disclosed in another case in 2008 that Mr. Haddon had represented him and his wife in a state court matter. That disclosure is not inconsistent with the one here because (1) the judge did not say Mr. Haddon had not represented him in the past; and (2) both disclosures referred to contemporaneous representation in unrelated matters, where Mr. Haddon merely worked at the same firm as lawyers who were involved.

Haddon provided representation. But under § 455, a judge should "ignore rumors, innuendos, and erroneous information" and refuse recusal based "on unsupported, irrational, or highly tenuous speculation." *Hinman*, 831 F.2d at 939-40; *see, e.g.*, *United States v. Hines*, 696 F.2d 722, 729 (10th Cir. 1982) (upholding denial of motion to disqualify based on hearsay statements allegedly made by the judge to an unnamed individual). A judge also is not limited to the allegations or required to treat them as true, and should reject recusal when there is no valid basis. *Hinman*, 831 F.2d at 939.

We agree with the district judge that "[t]here is no indication that the attorney who represented [him] has created a 'favor bank,' or that [he] would repay such favors by ruling for all 113 Defendants in this case in which unrelated lawyers at [the attorney's] firm represented a single Defendant and withdrew years ago." Aplts. App. Vol. 42 at 7999 (citation omitted). Moreover, we affirmed the dismissal of Appellants' complaint, and the lone defendant represented by attorneys at Mr. Haddon's firm did not seek, and was not awarded, attorney's fees. The district judge also gave Appellants ample opportunity to contest the fees, and he reduced the fees where appropriate.[12] Finally, contrary to their conclusory assertion, the fact that Appellants' Rule 60(b)(6) motion was sealed in no way shows the recusal standard has been met.

---

[12] The judge: (1) ensured Defendants produced their invoices with sufficient time for Mr. Hernandez to review them before filing his brief; (2) allowed him to file a surreply; (3) held a hearing, at which Mr. Hernandez questioned only Defendants' expert and declined to call other witnesses or offer additional evidence; (4) granted his request for additional time after the hearing to submit revised summaries on the fees; (5) made various reductions to the amount of the fees, including one where Mr. Hernandez failed to perform the necessary calculations; and (6) elected not to include appellate attorneys' fees in the § 1927 award, sparing Mr. Hernandez over $300,000 in additional liability.

28

Appellants have failed to show that the district judge was actually biased or that a reasonable person would doubt his impartiality under the circumstances. The district judge did not err in refusing to recuse himself and denying the Rule 60(b)(6) motion.

## IV. Cumulative Error

Finally, Appellants seek relief on the ground of cumulative error. Under this doctrine, we "aggregate[] all the errors that individually have been found harmless" and decide "whether their cumulative effect . . . is such that collectively they can no longer be determined to be harmless." *Smith v. Sharp*, 935 F.3d 1064, 1088 n.14 (10th Cir. 2019). Although we have applied this doctrine in criminal and habeas cases, Appellants cite no non-habeas civil case, and whether it applies in this context may be an unresolved question. *See Ventura v. Kyle*, 825 F.3d 876, 886 (8th Cir. 2016) (noting circuit split). But we need not decide that issue because Appellants have not shown any errors to aggregate. *See Hooks v. Workman*, 689 F.3d 1148, 1194-95 (10th Cir. 2012) (noting the doctrine does not apply "to the cumulative effect of non-errors" (alterations and internal quotation marks omitted)). Accordingly, their claim of cumulative error fails.

## CONCLUSION

The district court's orders are affirmed. The motion to unseal Volume 43 of Appellants' Appendix is denied.

Entered for the Court


Gregory A. Phillips
Circuit Judge


29